IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN

| | |
|---|---|
| AMERICAN RESORT DEVELOPMENT ASSOCIATION - RESORT OWNERS' COALITION,<br><br>           Plaintiff,<br><br>      v.<br><br>GOVERNMENT OF THE VIRGIN ISLANDS,<br><br>           Defendant. | Civil Action No.: 3:17-cv-00032<br><br>ACTION FOR DECLARATORY AND INJUNCTIVE RELIEF |

## FIRST AMENDED COMPLAINT

Plaintiff by and through its undersigned counsel, states and alleges the following:

## PARTIES

1.      The American Resort Development Association ("ARDA") is a not-for-profit corporation that serves as an industry group for the timeshare industry.  ARDA is based in Washington D.C.  It represents timeshare owners through its ARDA-Resort Owners' Coalition ("ARDA-ROC").  ARDA-ROC is a separate not-for-profit corporation also based in Washington D.C.  ARDA-ROC represents hundreds of owners of timeshare units in the U.S. Virgin Island, who are affected by the Timeshare Impact Fee.

2.      The U.S. Virgin Islands constitute an unincorporated territory of the United States, and are comprised of the islands of St. Croix, St. John, and St. Thomas, and lesser islands.  The Government of the Virgin Islands operates and is created under the Revised Organic Act of the Virgin Islands, 48 U.S.C § 1541, *et seq*.

## JURISDICTION

3. The Court has jurisdiction over the subject matter of this case pursuant to 28 U.S.C. § 1331 as Plaintiff's claims arise under the Constitution and laws of the United States of America.

4. The Court also has jurisdiction over the subject matter of this case pursuant to 28 U.S.C. § 1343 as Plaintiff's claims seek redress for deprivation, under color of law, rights, privileges, and immunities secured by the Constitution of the United States and an Act of Congress providing for equal rights of all persons within the jurisdiction of the United States of America.

5. Venue is proper under 28 U.S.C. § 1391(b) because the events giving rise to the claim occurred in this district.

## FACTS RELATING TO CHALLENGED
## U.S. VIRGIN ISLANDS STATUTE

6. The legislature of the U.S. Virgin Islands passed, and, on March 22, 2017, Governor Kenneth E. Mapp signed into law, the Virgin Islands Revenue Enhancement and Economic Recovery Act of 2017, which included the Environmental/Infrastructure Impact Fee for Timeshares (the "Timeshare Impact Fee"). *See* Exhibit 1.

7. The Timeshare Impact Fee is imposed on the occupancy of a timeshare unit in the U.S. Virgin Islands at a rate of $25 per day of occupancy by the owner of such unit, by someone who exchanges a timeshare unit at a different location for a timeshare unit in the Virgin Islands, or by any such other person(s) occupying the timeshare unit. The Timeshare Impact Fee took effect on May 1, 2017.

8. In enacting the Timeshare Impact Fee, the Virgin Islands Revenue Enhancement and Economic Recovery Act of 2017 also repealed a previously enacted Timeshare Room Tax, which although enacted, the Government contends was never enforced or collected. The

Timeshare Room Tax was to have been imposed at the rate of 10.5 percent of the rental value of the timeshare unit, and was similar to the Hotel Room Tax imposed on hotel guests.

9. ARDA-ROC represents over a million time-share owners. Part of its mission is to protect and advocate for their rights to be free from laws that unduly burden them and the timeshare industry. ARDA-ROC represents hundreds of owners of timeshare interests in the USVI, who are affected by the Timeshare Impact Fee that is the subject of this litigation.

10. Timeshare owners, who own interests in timeshare units in the U.S. Virgin Islands, pay property taxes on their real property interests. The property taxes paid by timeshare owners are taxed at the highest mil rate used for any classification of real property in the U.S. Virgin Islands. The Timeshare Impact Fee is imposed in addition to the property taxes already imposed on timeshare owners in the U.S. Virgin Islands. It also appears from the statutory text and from statements made by Governor Mapp that the Timeshare Impact Fee is imposed in addition to the hotel occupancy tax of 12.5 percent applicable to the occupancy of any timeshare unit made available for short-term rental.

11. Neither the Timeshare Impact Fee, nor any similar fee is imposed on any other class of owners of real estate in the U.S. Virgin Islands. Thus, for example, the owner of a vacation condominium or vacation home in the U.S. Virgin Islands is not required to pay a fee for occupying the owned real estate.

12. Revenues collected from the Timeshare Impact Fee are to be allocated in the following manner: (a) 15 percent to the U.S. Virgin Islands Tourism Advertising Revolving Fund, (b) for the remainder of fiscal year 2017 and for fiscal years 2018, 2019, 2020, and 2021, 85 percent to the General Fund (for fiscal years 2018 and 2019, up to $4,000,000 deposited must be appropriated to and divided equally between the Roy Lester Schneider Medical Center and Juan

3

Luis Hospital and Medical Center), (c) for fiscal years 2022 and 2023, 40 percent to the General Fund and 45 percent to the VIESA Contingency Reserve Account, and (d) for 2024 and thereafter, 85 percent to the General Fund.  The VIESA Contingency Reserve Account funds a negotiated litigation settlement of the U.S. Virgin Islands' Government.

13. The Bureau of Economic Research, in collaboration with the Post Audit Division, is required to conduct a study on the impact of timeshare activities and components in the U.S. Virgin Islands within two years of implementation of the Timeshare Impact Fee (the "Study"). The Study has not been conducted as of the date of this Complaint.

14. Based on ARDA member statistics, and information regarding the ownership of timeshares in the entire Caribbean region, it appears that more than 99 percent of timeshare owners in the U.S. Virgin Islands are non-residents.

15. Governor Mapp submitted the proposal for the Virgin Islands Revenue Enhancement and Economic Recovery Act of 2017 to the legislature on December 16, 2016, and called the legislature into a special session on December 20, 2016.  In a news release from Governor Mapp's website dated December 16, 2016 detailing Governor Mapp's submission of the act to the legislature and requesting a special session (the "December 2016 News Release"), the author expressed, "The financial team has identified new revenue streams targeting specific non-essential commodities and areas of the economy that can contribute more **without increasing the cost of living to V.I. residents**." *See* Exhibit 2.

16. The December 2016 News Release identified the revenue sources: "The measures identify new revenues from **external sources**."  It further elaborated, "This is a bill, which seeks what the Governor believes is a 'reasonable contribution' **from visitors** to maintain infrastructure and to preserve the environment which they enjoy."

4

17. At a press conference on December 12, 2016 (the "December 2016 Press Conference"), Governor Mapp proclaimed, "There will be no additional costs for food, clothing, mortgages or **standard needs for living for locals**. **Our visitors** that are utilizing our infrastructure and contributing waste and wear on the system **will be asked to contribute** their fair share." *See* Exhibit 3.

18. Numerous newspaper articles reported that Governor Mapp intended to target visitors, not residents, as additional revenue sources to ameliorate systematic and structural budget deficits. Such articles include The Virgin Islands Consortium article dated December 12, 2016 and St. Thomas Source article dated December 19, 2016. *See* Exhibits 3 and 4.

19. In Governor Mapp's letter to the Honorable Neville James dated December 16, 2016 (the "December 2016 Letter") about the Virgin Islands Revenue Enhancement and Economic Recovery Act of 2017, Governor Mapp states, "It is important to emphasize that the new revenues we are seeking are not from the usual source- the business community or the backs of the working people and retirees of the Virgin Islands. Rather, **we are seeking these new revenues from external sources** who we are now asking to make a reasonable contribution to the upkeep of our infrastructure and the preservation of our pristine environment, which they enjoy. Simply put, **this bill seeks** a reasonable **contribution from visitors to our shores** and a slight burden on our business community to collect these revenues." *See* Exhibit 5.

20. The December 2016 Letter elaborates on the litigation settlement funding and deficit restoration: "Importantly, the new revenues generated by the Environmental/Infrastructure Impact Fee will address the contingent obligations resulting from negotiated settlement related to the U.S. Court of Appeals for the Third Circuit in the VIESA Case, which I have directed the Attorney General not to appeal. Additionally, it will restore lost wages to our hard-working

Government employees, whether in or out of government, and help generate financial stability without impacting the revenue initiatives included in the Plan.  These measures will provide confidence in the Government's commitment to financial stability and therefore ensure that the Government will have continued access to the capital markets at reasonable rates for its essential infrastructure and capital project purposes."

21.     Governor Mapp explained that the Timeshare Impact Fee is an additional tax, imposed almost exclusively on non-residents. *See* Exhibit 6.

22.     In a news release on Governor Mapp's website dated January 11, 2017 detailing a meeting between Governor Mapp, members of his administration, the legislature, and the business community (the "January 2017 News Release), Governor Mapp explained, "We must identify a level of taxation on these on nonessential items that will allow for revenue enhancement."  *See* Exhibit 6.

23.     In the Committee on Finance's Bill Summary to Bill No. 32-0005 dated January 24, 2017 (the "Bill Summary"), the legislature stated, "**Under current law, there is no financial mechanism, save a real property assessment**, for recouping the costs to the Territory of the infrastructure necessary to support the presence of so many welcomed **visitors and timeshare owners.**"  *See* Exhibit 7.  Similar language appeared in Governor Mapp's letter to the Honorable Neville James dated January 9, 2017.  *See* Exhibit 8.

24.     In a newspaper article dated January 31, 2017, which reported on Governor Mapp's State of the Territory Address on January 30, 2017 (the "State of the Territory Address Article"), the author stated, "A coalition of private sector businesses came out forcefully against the measure, stating that it would hurt an already weak economy.  **But Mr. Mapp said the aim of the**

**measure was not to burden residents; instead, the measure would target tourists.**" *See* Exhibit 9.

## FIRST CAUSE OF ACTION
## THE TIMESHARE IMPACT FEE VIOLATES THE COMMERCE CLAUSE

25. The Plaintiff repeats and re-alleges the facts contained in paragraphs 1 through 24, and incorporates the same by reference.

26. The Commerce Clause, found in Article I, § 8 of the United States Constitution, grants Congress the power to regulate interstate commerce. The dormant Commerce Clause limits taxing powers and prohibits actions that discriminate against interstate commerce.

27. The Timeshare Impact Fee violates the Commerce Clause because it intentionally discriminates against interstate commerce by imposing a fee that is targeted at non-residents who purchase and own timeshare units in the U.S. Virgin Islands.[1] Governor Mapp targeted timeshare owners for the occupancy fee because he and the Virgin Islands Senators know that timeshares are overwhelmingly owned by non-residents, who are ineligible to vote in the Virgin Islands, and therefore are disadvantaged with respect to mounting political opposition to the imposition of the Timeshare Impact Fee.

28. As stated above, the data based on ARDA members who own and manage timeshare properties show that the overwhelming majority - more than **99** percent - of timeshare units in the U.S. Virgin Islands are owned by non-residents. This targeted, discriminatory, revenue legislation that has the purposeful intent to impose fees almost exclusively on interstate commerce violates the Commerce Clause.

---

[1] The Timeshare Impact Fee also applies to individuals who exchange timeshare units in other locations to obtain a stay at a timeshare unit in the U.S. Virgin Islands.

29. The Timeshare Impact Fee also violates the Commerce Clause because it is disproportionate to the timeshare occupants' impact on the U.S. Virgin Islands' environment and infrastructure. The impact that timeshare occupants have on the U.S. Virgin Islands environment and infrastructure is unknown. The Government of the U.S. Virgin Islands has yet to complete the Study of the impact of timeshare owners on the U.S. Virgin Islands environment and infrastructure, which was provided for in the Virgin Islands Revenue Enhancement and Economic Recovery Act, and is to be funded from the proceeds of the Timeshare Impact Fee.

30. In addition, the Virgin Islands Revenue Enhancement and Economic Recovery Act of 2017 sets forth uses for the Timeshare Impact Fee that are unrelated to paying the costs of timeshare owners' impact on the environment and infrastructure of the U.S. Virgin Islands. Part of the revenues to be generated from the Timeshare Impact Fee is dedicated to pay wages to government employees under the resolution of a labor suit. Accordingly, the proceeds of the Timeshare Impact Fee are not structured to cover the costs of timeshare owners' impact on the environment and infrastructure of the U.S. Virgin Islands, which are unknown at this time.

31. The comments by Governor Mapp and others make it clear that the intention in enacting the Timeshare Impact Fee is to make non-resident timeshare owners exclusively bear the costs of funding the U.S. Virgin Islands revenue needs. The U.S. Virgin Islands Government avoids imposing those costs on its citizens and residents, who obtain the lion's share of the benefits from those public goods and services.

### SECOND CAUSE OF ACTION
### THE TIMESHARE IMPACT FEE VIOLATES THE EQUAL PROTECTION AND PRIVILEGES AND IMMUNITIES CLAUSES OF THE UNITED STATES CONSTITUTION.

32. The Plaintiff repeats and re-alleges the facts contained in paragraphs 1 through 31, and incorporates the same by reference.

33. The Equal Protection Clause under § 1 of the 14th Amendment of the United States Constitution provides that no state shall deny to any person within its jurisdiction the equal protection of the laws. The Equal Protection Clause is applicable to the U.S. Virgin Islands pursuant to § 3 of the Revised Organic Act of 1954.

34. The Timeshare Impact Fee violates the Equal Protection Clause of the U.S. Constitution because it discriminates against timeshare owners as compared to other U.S. Virgin Islands real property owners.

35. Timeshare owners possess an interest in real estate, and as such, they pay property tax in the U.S. Virgin Islands on the value of their timeshare interests at the highest mil rate of any classification of real property in the U.S. Virgin Islands. The Timeshare Impact Fee is an additional tax that is not imposed on other real estate owners. For example, owners of single family residences, condominiums, vacation homes, or other types of residences or real estate interests are not subject to the Timeshare Impact Fee.

36. The Timeshare Impact Fee violates the Equal Protection Clause of the U.S. Constitution because it discriminates against timeshare owners as compared to other short-term rental owners.

37. It appears from the statute that the Timeshare Impact Fee applies in addition to the 12.5 percent hotel occupancy tax. If, as the statute suggests, both the Timeshare Impact Fee and 12.5 percent hotel occupancy tax apply, then the Timeshare Impact Fee places timeshare owners at a competitive disadvantage compared to other short-term rental owners. There is no rational basis

for treating timeshare owners differently from other short-term rental owners, when the impact on the U.S. Virgin Islands environment and infrastructure by timeshare occupants, especially measured against the impact of other categories of "welcomed visitors" such as hotel guests, VRBO renters, Airbnb renters, or other short-term renters, is unknown.

38.     The Timeshare Impact Fee violates the Equal Protection Clause of the U.S. Constitution because there is no rational basis for distinguishing timeshare owners from owners of other property and subjecting them to the additional Timeshare Impact Fee.  In fact, Governor Mapp stated that the Timeshare Impact Fee is being enacted specifically because it exclusively applies to non-voting, non-residents who own timeshare units in the U.S. Virgin Islands.

39.     The Timeshare Impact Fee also violates the Equal Protection Clause because it intentionally discriminates against non-residents.  The Timeshare Impact Fee was specifically targeted at timeshare owners because, as a group, they are overwhelmingly comprised of non-resident individuals.

40.     The Privileges and Immunities Clause, found in Article IV, § 2 of the U.S. Constitution, requires that the citizens of each state shall be entitled to all privileges and immunities of citizens in the several states.

41.     The Timeshare Impact Fee violates the Privileges and Immunities Clause of the U.S. Constitution because it was specifically targeted at and intended to discriminate against non-resident timeshare owners, thus depriving them with the privileges and rights afforded to citizens and residents of the Virgin Islands.

WHEREFOR, Plaintiff requests (1) declaratory relief that the Timeshare Impact Fee is unconstitutional and unenforceable, (2) a permanent injunction to enjoin the Government of the U.S. Virgin Islands from enforcing this unconstitutional statute, and (3) such other relief as the Court may deem appropriate under the circumstances.

Dated: July 12, 2017

*/s/ Chad C. Messier*
CHAD C. MESSIER
Dudley, Topper & Feuerzeig, LLP
1000 Frederiksberg Gade
P.O. Box 756
St. Thomas, Virgin Islands 00804
Telephone: 340-774-4422
Fax: 340-715-4400
Email: CMessier@dtflaw.com

Attorney for ARDA-ROC

**CERTIFICATE OF SERVICE**

It is hereby certified that on this 12th day of July, 2017, the foregoing **First Amended Complaint** was filed with the Clerk of the Court using the CM/ECF system, which will send a notice of such filing to:

Hugh A. Greentree, Esq.
Department of Justice
Office of the Attorney General
34-38 Kronprindsens Gade
GERS Building, 2nd Floor
St. Thomas, VI 00802

/s/ Chad C. Messier

11