# IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. THOMAS AND ST. JOHN

| | |
|---|---|
| AMERICAN RESORT DEVELOPMENT ASSOCIATION – RESORT OWNERS' COALITION,<br><br>                Plaintiff,<br><br>      v.<br><br>GOVERNMENT OF THE VIRGIN ISLANDS,<br><br>                Defendant. | CASE NO. 3:17-cv-00032 |

# MEMORANDUM OF LAW IN OPPOSITION
## TO DEFENDANT'S MOTION TO DISMISS

# TABLE OF CONTENTS

I.      Introduction ................................................................................................... 1

II.     Factual background ........................................................................................ 2

III.    Procedural Record .......................................................................................... 5

IV.     Standard of Review ........................................................................................ 5

        A.      12(b)(1) Motion to Dismiss for Lack of Subject Matter Jurisdiction ..................... 5

        B.      12(b)(6) Motion to Dismiss .................................................................. 6

V.      Discussion ...................................................................................................... 7

        A.      The Timeshare Impact Fee Violates the Commerce Clause and is Invalid ............ 8

                1.      The Timeshare Impact Fee Discriminates Against Non-Residents and
                        Interstate Commerce. ........................................................................ 10

                2.      The Timeshare Impact Fee is Not Fairly Related to Governmental
                        Services Received. ........................................................................... 13

                        (a)     The Timeshare Impact Fee is Duplicative of Real Property
                                Taxes Paid by Timeshare Owners................................................. 13

                        (b)     The Timeshare Impact Fee Bears No Relation to the
                                Government Services Provided..................................................... 15

        B.      The Timeshare Impact Fee Violates the Equal Protection Clause......................... 17

        C.      The Timeshare Impact Fee Violates the Privileges and Immunities Clause ......... 21

        D.      The Government's Reliance on *Frank* is Misplaced. ........................................... 23

        E.      ARDA-ROC Has Association Standing To Sue On Behalf Of Its Members ........ 24

        F.      Defendant's Other Standing Issues are Meritless .................................................. 25

        G.      The Tax Anti-Injunction Act Does Not Apply ...................................................... 26

                1.      The Third Circuit's *Pan Am. World Airways* Decision Controls and Is
                        Binding on this Court...................................................................... 26

H.   Even if the Tax Injunction Act Were to Apply, the Superior Court of the Virgin Islands Court Does Not Provide A Plain, Speedy, and Efficient Remedy ............................................................................................................28

VI.   Conclusion ........................................................................................................30

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adams Express Co. v. Ohio State Auditor*,
    165 U.S. 194 (1897).................................................................................................17

*Alston v. Parker*,
    363 F.3d 229 (3d Cir.2004)...................................................................................6

*Am. Trucking Ass'n, Inc. v. Scheiner*,
    483 U.S. 266 (1987)..............................................................................................15

*Askew v. Trs. of Gen. Assembly of Church of the Lord Jesus Christ of the*
    *Apostolic Faith, Inc*.,
    684 F.3d 413 (3d Cir. 2012)................................................................................6

*Bacchus Imports, Ltd. v. Dias*,
    468 U.S. 263 (1984)..............................................................................10, 12, 13

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007)..........................................................................................6, 7

*Berne Corp. v. Gov't of the V.I.*,
    570 F.3d 130 (3d. Cir. 2009).......................................................................26, 27

*Boston Stock Exch. v. State Tax Comm'n*,
    429 U.S 318 (1977)..............................................................................................12

*Brown Forman Co. v. Kentucky*,
    217 U.S. 563 (1910)..............................................................................................23

*Car Carriers, Inc. v. Ford Motor Co*.,
    745 F.2d 1101 (7th Cir.1984) ............................................................................7

*Common Cause of Pa. v. Pa.*,
    558 F.3d 249 (3d. Cir. 2009)............................................................................25

*Commonwealth Edison Co. v. Mont.*,
   453 U.S. 609 (1981) ............................................................................8, 9, 15

*Complete Auto Transit v. Brady*,
   430 U.S. 274 (1977) ....................................................8, 9, 12, 13, 15, 17

*Coulter v. Paul Laurence Dunbar Community Center*,
   2017 WL 1379414 (3d Cir. Apr. 13, 2017) ...........................................5

*Erickson v. Pardus*,
   551 U.S. 89 (2007) (per curiam) ...........................................................6

*Exxon Corp. v. Eagerton*,
   462 U.S. 176 (1983) ...............................................................................18

*Frank v. Gov't of the V.I.*,
   2012 WL 611373 (D.V.I. Feb. 23, 2012).............................................23

*Frank v. Gov't of the V.I.*,
   563 Fed.Appx. 169 (3d. Cir. 2014)................................................23, 24

*Fulton Corp. v. Faulkner*,
   516 U.S. 325 (1996) ...............................................................................13

*Gould Elecs. v. United States*,
   220 F.3d 169 (3d Cir. 2000)................................................................5, 6

*Granholm v. Heald*,
   544 U.S. 460 (2005) .................................................................................8

*H.P. Hood & Sons, Inc. v. DuMond*,
   336 U.S. 525 (1949) .................................................................................8

*Hunt v. Wash. State Apple Advert. Comm'n*,
   432 U.S. 333 (1977)....................................................................10, 24, 25

*Lehnhausen v. Lake Shore Auto Parts Co.*,
   410 U.S. 356 (1973)...........................................................................17, 23

*Lower Love S.S., Inc. v. Ginseng Up Corp.*,
   50 V.I. 937 (D.V.I. 2008).........................................................................5

*Lunderstadt v. Colafella*,
   885 F.2d 66 (3d Cir.1989)........................................................................5

*Lunding v. N.Y. Tax Appeals Tribunal*,
   522 U.S. 287 (1998)...........................................................................21, 22

*Metro. Life Ins. Co. v. War*d,
   470 U.S. 869 (1985)............................................................................................18, 21, 22

*Minnesota v. Clover Leaf Creamery Co.*,
   449 U.S. 456 (1981)..........................................................................................................10

*Pan Am. World Airways, Inc. v. Gov't of the V.I.*,
   459 F.2d 387 (3d. Cir. 1972)......................................................................................26, 27

*Perini Corp. v. Massachusetts Commissioner of Rev.*,
   647 N.E.2d 52 (Mass. 1995) ..........................................................................................17

*Plyler v. Doe*,
   457 U.S. 202 (1982)..........................................................................................................17

*Road Improvement Dist. No. of Franklin Cty. Ark. v. Mo. Pac. Railroad Co.*,
   274 U.S. 188 (1927)..........................................................................................................20

*Rothensies v. Fidelity-Philadelphia Trust Co.*,
   112 F.2d 758 (3d. Cir. 1940)...........................................................................................14

*Sup. Ct. of N.H. v. Piper*,
   470 U.S. 274 (1985)..........................................................................................................22

*Taliaferro v. Darby Township. Zoning Bd.*,
   458 F.3d 181 (3d Cir. 2006)..............................................................................................6

*U.S. v. Craft*,
   535 U.S. 274 (2002)..........................................................................................................13

*United States v. Roberts*,
   2017 WL 1193727, ** 1-2 (D.V.I. Mar. 30, 2017)........................................................6

*United Steel Paper and Forestry Rubber Manufacturing Allied Industrial and*
   *Service Worker Int'l Union AFL-CIO-CLC v. Government of the Virgin*
   *Islands*,
   842 F.3d 201 (3d Cir. 2016)..............................................................................................2

*Va. Historic Tax Credit Fund 2001 LP vs. C.I.R.*, 639 F.3d 129 (4th Cir. 2011).........................14

*Victaulic Co. v. Tieman*,
   499 F.3d 227 (3d Cir. 2007)..............................................................................................7

*W. & S. Life Ins. Co. v. State Bd. of Equalization*,
   451 U.S. 648 (1981)..........................................................................................................18

*Ward v. Maryland.*,
   79 U.S. 418 (1870)............................................................................................................21

*WHYY, Inc. v. Borough of Glassboro*,
    393 U.S. 117 (1968)............................................................................................18

*Williams v. Vt.*,
    472 U.S. 14 (1985)............................................................................................18

*Ex Parte Young*,
    209 U.S. 123 (1908)..........................................................................................25

**Statutes**

Virgin Island Revenue Enhancement and Economic Recovery Act of 2017 ............................3, 4

Tax Injunction Act, 28 USCA § 1341 ..............................................................................7, 26

Virgin Islands Revenue Enhancement and Economic Recovery Act of 2017................................1

**Rules**

Rule 12(b) ...............................................................................................................6

Rule 12(b)(1)..........................................................................................................5, 6

Rule 12(b)(6).....................................................................................................5, 6, 7, 24

**Other Authorities**

U.S. Const., art. I, § 8, cl. 3.........................................................................................8

U.S. Const., art. IV, § 2, cl. 1.......................................................................................21

United States Constitution 14th Amendment, Equal Protection Clause..................................17, 30

## I.      INTRODUCTION

The Government of the Virgin Islands (the "Government") contends that, "[t]he primary issue is whether the Government of the Virgin Islands can impose a fee or tax on the use of real property within the territory."   While accurate, the Government's synopsis is incomplete.   More completely stated, the primary issue in this case is whether the Government can impose an occupancy or use fee upon non-resident property owners (who pay property taxes to the Government at the highest mil rate in the territory) for the privilege of using their own property when the Government does not charge its own citizens a comparable fee.

In this action, Plaintiff, the American Resort Development Association — Resort Owner's Coalition ("ARDA-ROC"), is challenging the constitutionality of the recently enacted Environmental/Infrastructure Timeshare Impact Fee (the "Timeshare Impact Fee").   The Timeshare Impact Fee was enacted as part of the Virgin Islands Revenue Enhancement and Economic Recovery Act of 2017 (the "2017 Tax Act").

In enacting the Timeshare Impact Fee, Kenneth E. Mapp, Governor of the Virgin Islands (the "Governor") and the Legislature of the Virgin Islands (the "Legislature") intentionally sought to discriminate against timeshare owners, who are almost exclusively non-residents. The Governor and Legislature did not even attempt to hide that they were purposefully discriminating.  Instead, they clearly and publicly stated that they intended to impose a tax that would be borne by non-residents, or in their terminology, "welcomed visitors", and would not apply to residents of the Virgin Islands.

The Timeshare Impact Fee is intentionally discriminatory against non-residents and interstate commerce in violation of the Commerce, Equal Protection, and Privileges and Immunities Clauses of the United States Constitution.

## II.    FACTUAL BACKGROUND

The Timeshare Impact Fee was enacted as part of the 2017 Act, which became law on March 22, 2017.[1]  The Timeshare Impact Fee is a $25 per day fee for the use of timeshare units by the owner or any party authorized by the owner, including short-term renters.

Revenues collected from the Timeshare Impact Fee are to be allocated in the following manner: (a) 15 percent to the Virgin Islands Tourism Advertising Revolving Fund, (b) for the remainder of fiscal year 2017 and for fiscal years 2018, 2019, 2020, and 2021, 85 percent to the General Fund (for fiscal years 2018 and 2019, up to $4,000,000 deposited must be appropriated to and divided equally between the Roy Lester Schneider Medical Center and Juan Luis Hospital and Medical Center), (c) for fiscal years 2022 and 2023, 40 percent to the General Fund and 45 percent to the VIESA Contingency Reserve Account, and (d) for 2024 and thereafter, 85 percent to the General Fund.[2]  The VIESA Contingency Reserve Account funds a negotiated litigation settlement of the Virgin Islands Government.[3]  No revenues collected from the Timeshare Impact Fee are earmarked or otherwise set aside for their purported purpose — to compensate the Government for the environmental and infrastructure resources being used by owners of Virgin Islands timeshares.

The Bureau of Economic Research, in collaboration with the Post Audit Division, is required to conduct a study on the impact of timeshare activities and components in the Virgin Islands within two years of implementation of the Timeshare Impact Fee (the "Study").[4]  The Study has not been conducted.

---

[1] First Amended Complaint ¶ 6.
[2] First Amended Complaint ¶ 12.
[3] *See generally, United Steel Paper and Forestry Rubber Manufacturing Allied Industrial and Service Worker Int'l Union AFL-CIO-CLC v. Government of the Virgin Islands*, 842 F.3d 201 (3d Cir. 2016).
[4] First Amended Complaint ¶ 13.

Based on ARDA-ROC member statistics, and information regarding the ownership of timeshares in the entire Caribbean region, it appears that more than 99 percent of timeshare owners in the Virgin Islands are non-residents.[5]

In connection with the enactment of the 2017 Tax Act and the Timeshare Impact Fee, the Governor and Legislature made a number of comments concerning the targeting of the Timeshare Impact Fee as a fee on non-residents.

Governor Mapp submitted the proposal for the 2017 Tax Act to the Legislature on December 16, 2016, and called the Legislature into a special session on December 20, 2016.  A news release from Governor Mapp's website dated December 16, 2016 detailing Governor Mapp's submission of the act to the Legislature and requesting a special session (the "December 2016 News Release") stated: "The financial team has identified new revenue streams targeting specific non-essential commodities and areas of the economy that can contribute more **without increasing the cost of living to V.I. residents**."[6]

The December 2016 News Release identified the revenue sources: "The measures identify new revenues from **external sources**."  It further elaborated, "This is a bill, which seeks what the Governor believes is a 'reasonable contribution' **from visitors** to maintain infrastructure and to preserve the environment which they enjoy."[7]

At a press conference on December 12, 2016 (the "December 2016 Press Conference"), Governor Mapp proclaimed: "There will be no additional costs for food, clothing, mortgages or **standard needs for living for locals**.  **Our visitors** that are utilizing our infrastructure and contributing waste and wear on the system **will be asked to contribute** their fair share."[8]

---

[5] *Id.* at ¶ 15.
[6] *Id.* at ¶ 15 and Exhibit 2 to the First Amended Complaint.
[7] *Id.*
[8] *Id.* at ¶ 17 and Exhibit 3 to the First Amended Complaint.

Numerous newspaper articles reported that Governor Mapp intended to target visitors, not residents, as additional revenue sources to ameliorate systematic and structural budget deficits. Such articles include The Virgin Islands Consortium article dated December 12, 2016 and St. Thomas Source article dated December 19, 2016.[9]

In Governor Mapp's letter to the Honorable Neville James dated December 16, 2016 (the "December 2016 Letter") about the 2017 Tax Act, Governor Mapp stated: "It is important to emphasize that the new revenues we are seeking are not from the usual source — the business community or the backs of the working people and retirees of the Virgin Islands. Rather, **we are seeking these new revenues from external sources** who we are now asking to make a reasonable contribution to the upkeep of our infrastructure and the preservation of our pristine environment, which they enjoy. Simply put, **this bill seeks** a reasonable **contribution from visitors to our shores** and a slight burden on our business community to collect these revenues."[10]

In the Committee on Finance's Bill Summary to Bill No. 32-0005 dated January 24, 2017 (the "Bill Summary"), the Legislature stated, "**Under current law, there is no financial mechanism, save a real property assessment**, for recouping the costs to the Territory of the infrastructure necessary to support the presence of so many welcomed **visitors and timeshare owners.**" Similar language appeared in Governor Mapp's letter to the Honorable Neville James dated January 9, 2017.[11]

In a newspaper article dated January 31, 2017, which reported on Governor Mapp's State of the Territory Address on January 30, 2017 (the "State of the Territory Address Article"), the author stated, "A coalition of private sector businesses came out forcefully against the measure,

---

[9] *Id.* at ¶ 18 and Exhibits 3 and 4 to the First Amended Complaint.
[10] *Id.* at ¶ 19 and Exhibit 5 to the First Amended Complaint.
[11] *Id.* at ¶ 23 and Exhibit 5 to the First Amended Complaint.

stating that it would hurt an already weak economy.  **But Mr. Mapp said the aim of the measure was not to burden residents; instead, the measure would target tourists.**"[12]

## III.    PROCEDURAL RECORD

Plaintiff filed its original compliant in this matter on May 1, 2017.   On June 22, Defendant filed a motion to dismiss under Rules 12(b)(1) and 12(b)(6).  Plaintiff filed an amended complaint on July 12, 2017, to address jurisdictional issues raised in the Defendant's motion to dismiss.  Defendant then filed a motion to dismiss the amended complaint on July 26, 2017.  Plaintiff filed a Notice of Enlargement of Time to file its response to Defendant's motion to dismiss until August 18, 2017.

## IV.    STANDARD OF REVIEW

### A.    12(b)(1) Motion to Dismiss for Lack of Subject Matter Jurisdiction

Defendant made a motion to dismiss pursuant to Fed. Civ. P. 12(b)(1) claiming that the court lacks jurisdiction to hear this matter.  As this Court has recognized: "The threshold to withstand a motion to dismiss under [Rule] 12(b)(1) is ... lower than that required to withstand a Rule 12(b)(6) motion."[13]

The Government's discussion of the difference between facial or factual challenges under Rule 12(b)(1) does nothing to alter this deferential standard of review.

As this Court previously explained:

A Rule 12(b)(1) motion may be treated as either a facial or a factual challenge to a court's subject-matter jurisdiction. *See Gould Elecs. v. United States*, 220 F.3d 169, 178 (3d. Cir. 2000).

---

[12] *Id.* at ¶ 24 and Exhibit 9 to the First Amended Complaint.

[13] *Lower Love S.S., Inc. v. Ginseng Up Corp*., 50 V.I. 937, 941 (D.V.I. 2008)(citing *Lunderstadt v. Colafella*, 885 F.2d 66, 70 (3d. Cir.1989));  *see also Coulter v. Paul Laurence Dunbar Community Center*, 2017 WL 1379414, *3 (3d. Cir. Apr. 13, 2017) ("Under the Rule 12(b)(1) standard, a claim fails to invoke the District Court's jurisdiction only if it is 'wholly insubstantial and frivolous.'") (citation omitted).

In considering a facial challenge to subject-matter jurisdiction under Rule 12(b)(1), all material allegations in the complaint are taken as true. *Id*. at 189-92; *see also Taliaferro v. Darby Township. Zoning Bd*., 458 F.3d 181, 188 (3d. Cir. 2006) (summarizing the standard for facial attacks under Rule 12(b) as "whether the allegations on the face of the complaint, taken as true, allege facts sufficient to invoke the jurisdiction of the district court"). When a party has yet to answer the Complaint or engage in discovery, the motion to dismiss is a facial attack on the Court's subject matter jurisdiction. *See Askew v. Trs. of Gen. Assembly of Church of the Lord Jesus Christ of the Apostolic Faith, Inc*., 684 F.3d 413, 417 (3d. Cir. 2012) ("As the defendants had not answered and the parties had not engaged in discovery, the first motion to dismiss was facial").[14]

In this case, the Government has not answered the First Amended Complaint, nor have the parties engaged in discovery.   Consequently, the Government's motion to dismiss is a facial attack on the Court's subject matter jurisdiction.  As such, the Court must take all facts alleged in the First Amended Complaint as true, draw all reasonable inferences in favor of ARDA-ROC, and dismiss under Rule 12(b)(1) only if the factual allegations in the First Amended Complaint "clearly appear to be immaterial and made solely for the purpose of obtaining jurisdiction" or are "wholly insubstantial and frivolous." [15]

### B.      12(b)(6) Motion to Dismiss

Defendant has also made a motion to dismiss this action pursuant to Fed. Civ. P. 12(b)(6).  The Rule 12(b)(6) standards are well known.  "[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint."[16] All reasonable inferences are drawn in favor of the non-moving party.[17] A court must ask whether the complaint "contain[s] either direct or inferential allegations respecting all the

---

[14] *United States v. Roberts*, 2017 WL 1193727, ** 1-2 (D.V.I. Mar. 30, 2017).

[15] *Gould Electronics, Inc. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000).
[16] *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007) (per curiam) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)).
[17] *Alston v. Parker*, 363 F.3d 229, 233 (3d Cir.2004).

material elements necessary to sustain recovery under some viable legal theory."[18] "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do."[19] Thus, "[t]o survive a motion to dismiss, a ... plaintiff must allege facts that 'raise a right to relief above the speculative level on the assumption that the allegations in the complaint are true (even if doubtful in fact).'"[20]

## V.    DISCUSSION

ARDA-ROC has properly pleaded federal claims challenging the Timeshare Impact Fee under the Commerce, Equal Protection, and Privileges and Immunities Clauses of the United States Constitution.   This Court has subject matter jurisdiction to hear those claims.  ARDA-ROC has associational standing to litigate these issues on behalf of its hundreds of members who are subject to the Timeshare Impact Fee.  The Court's jurisdiction over this matter is not prohibited by the Tax Injunction Act, which does not apply.

Defendant's motion to dismiss this matter under Rules 12(b)(1) and 12(b)(6) should be denied.

---

[18] *Bell Atlantic Corp.*, 550 U.S. at 562 (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir.1984)).

[19] *Id*. at 545 (internal citations omitted).

[20] *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007) (citation omitted).

A.     **The Timeshare Impact Fee Violates the Commerce Clause and is Invalid**

The Commerce Clause provides: "The Congress shall have power … to regulate commerce … among the several states…."[21]  In addition to the power to regulate commerce, the Commerce Clause has been interpreted by the Supreme Court to restrict states' ability to discriminate or unduly burden interstate commerce even in the absence of specific federal legislation on the issue.[22]  This is known as the dormant or negative Commerce Clause.   The dormant Commerce Clause prevents states from engaging in protectionism or economic isolation to favor in-state over out-of-state economic interests.[23]

In *Complete Auto Transit v. Brady*, 430 U.S. 274 (1977), the Supreme Court established a four-part test to evaluate the constitutionality of a tax under the Commerce Clause: (1) the activity sought to be taxed has a substantial nexus in the taxing state, (2) the tax is fairly apportioned, (3) the tax does not discriminate against interstate commerce, and (4) the tax is fairly related to the benefits provided by the taxing state.[24]  A tax that fails to meet any one of the four criteria violates the Commerce Clause.

The Supreme Court has adopted a very broad view concerning the reach of the Commerce Clause.  As the Supreme Court stated in *Commonwealth Edison Co. v. Mont.*,[25] "The Court has, however, long since rejected any suggestion that a state tax or regulation affecting interstate commerce is immune from Commerce Clause scrutiny because it only attaches to a 'local' or 'intrastate activity.'"[26]  The Court went further to explain: "In reviewing Commerce Clause challenges to state taxes our goal has instead to 'establish a consistent and rational

---

[21] U.S. Const., art. I, § 8, cl. 3.
[22] *H.P. Hood & Sons, Inc. v. DuMond*, 336 U.S. 525 (1949).
[23] *Granholm v. Heald*, 544 U.S. 460 (2005).
[24] *Complete Auto Transit v. Brady*, 430 U.S. 274 (1977).
[25] *Commonwealth Edison Co. v. Mont.*, 453 U.S. 609, 615 (1981) (citations omitted).
[26] *Id.* at 615 (citations omitted).

method of inquiry focusing on 'the practical effect of a challenged tax."[27]  The Court then confirmed that the *Complete Auto* test was the proper test to apply in determining whether a state or local tax passed muster under the Commerce Clause.[28]

This case involves a territorial tax imposed by the Virgin Islands on a group that is almost exclusively non-residents.  The purchase and sale of timeshare units by non-residents, their travel to and use of those timeshare units, and the resale or sale of timeshare units in the Virgin Islands by both the resort owners and timeshare owners certainly has a substantial impact on interstate commerce.  Tourism is the primary industry in the Virgin Islands, making up more than 60 percent of its annual gross domestic product.[29]  The timeshare industry and non-resident timeshare owners have a significant impact on tourism in the Virgin Islands.  The Timeshare Impact Fee must therefore satisfy the *Complete Auto Transit* test to be valid under the Commerce Clause.

In this case, the Virgin Islands Timeshare Impact Fee violates the third and fourth prongs of the *Complete Auto Transit* tests, and thus, violates the Commerce Clause and is unconstitutional.  The Timeshare Impact Fee discriminates against non-residents and interstate commerce, and it is not fairly related to the services provided by the territory of the Virgin Islands because it is duplicative of the property taxes that are already imposed on timeshare owners by the territory.

---

[27] *Id.* at 615 (citations omitted).
[28] 453 U.S. 609 at 616.
[29] Central Intelligence Agency, The World Factbook, Virgin Islands (July 27, 2017), found at
https://www.cia.gov/library/publications/the-world-factbook/geos/vq/html.

9

1.      The Timeshare Impact Fee Discriminates Against Non-Residents and Interstate Commerce.

The Governor and Legislature intentionally sought to create a tax on non-residents that was not matched by a similar tax burden on residents.  ARDA-ROC is sympathetic to the Virgin Islands' plight: the Government needs money and is looking for ways to increase revenues to help reduce structural budget deficits.  The Commerce Clause, does not, however, permit state or territorial governments to enact taxes that discriminate against interstate commerce.

A state tax or regulatory statute need not be discriminatory on its face; it can be found to violate the Commerce Clause if it is discriminatory in effect.  *Bacchus Imports, Ltd. v. Dias*, 468 U.S. 263, 270 (1984) (economic protectionism violating the Commerce Clause can be determined either on the basis of discriminatory purpose or discriminatory effect).  Here, the Timeshare Impact Fee is discriminatory in its intent and application.

The Governor and Legislature intentionally targeted timeshare owners for this tax because they knew that timeshare owners are almost exclusively (well over 99 percent) non-residents, and had no political power to oppose the Timeshare Impact Fee.  In determining whether legislators had discriminatory intent in enacting legislation, courts frequently look to contemporaneous statements made by legislators in enacting the challenged legislation.[30]

The Governor and Legislature made a number of contemporaneous statements that made it clear that they intended to target non-residents in enacting the Timeshare Impact Fee.  In the December 2016 News Release detailing the Governor's submission of the act to the Legislature and requesting a special session, the author stated: "The financial team has identified new revenue streams targeting specific non-essential commodities and **areas of the economy** that can

---

[30] See, *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 352 (1977) (state commissioner's statement was strong evidence of discriminatory intent); *Minnesota v. Clover Leaf Creamery Co.,* 449 U.S. 456, 466 (1981) (senator and representatives' statements were relevant to demonstrate discriminatory purpose)

10

contribute more without increasing the cost of living to V.I. residents." The December 2016 News Release stated: "The measures identify new revenues **from external sources**." It further elaborated: "This is a bill, which seeks what the Governor believes is a 'reasonable contribution' **from visitors** to maintain the infrastructure and to preserve the environment which they enjoy."[31]

At a press conference on December 12, 2016, Governor Mapp stated: "There will be no additional costs for food, clothing, mortgages, or standard needs for living for locals. **Our visitors** that are utilizing our infrastructure and contributing waste and wear on the system will be asked to contribute their fair share."[32]

In the December 2016 Letter to the Honorable James Neville, the ranking democrat in the Senate, Governor Mapp stated:

> It is important to emphasize that the new revenues we are seeking are not from the usual source — the business community or the backs of working people and retirees of the Virgin Islands. Rather, we are seeking these **new revenues from external sources** who we are now asking to make a reasonable contribution to the upkeep of our infrastructure and the preservation of our pristine environment, which they enjoy. Simply put, the bill seeks a reasonable contribution **from visitors to our shores** and a slight burden on our business community to collect these revenues.[33]

In the Bill Summary, the Legislature stated: "Under current law, there is no financial mechanism, **save a real property assessment**, for recouping the costs to the Territory of the infrastructure necessary to support the presence of so many **welcomed visitors and timeshare owners.**"[34]

The Government specifically targeted non-residents when it imposed the Timeshare Impact Fee intentionally discriminating against out-of-state economic interests while not

---

[31] First Amended Complaint ¶¶ 15-16 and Exhibit 2 thereto.
[32] *Id.* at ¶ 17 and Exhibit 3 thereto.
[33] *Id.* at ¶ 19 and Exhibit 5 thereto.
[34] *Id.* at ¶ 23 and Exhibit 8 thereto.

imposing a similar burden on its residents.  The Timeshare Impact Fee discriminates against interstate commerce and thus fails the third prong of the *Complete Auto Transit* test in violation of the Commerce Clause.

In *Bacchus Imports*, the Supreme Court reiterated a fundamental principle under the Commerce Clause stating: "A cardinal rule of Commerce Clause jurisprudence is that 'no state, consistent with the Commerce Clause, may 'impose a tax which discriminates against interstate commerce … by providing direct commercial advantage to local business."[35]

Contrary to Defendant's contention, the Timeshare Impact Fee discriminates against interstate commerce and provides a commercial advantage to local businesses.  The timeshare industry in the Virgin Islands caters almost exclusively to non-residents, and the timeshare owners in the Virgin Islands are almost exclusively non-residents.

The imposition of the Timeshare Impact Fee makes timeshares or fractional real estate interests in the Virgin Islands less attractive then other types of real estate ownership such as direct fee ownership of single-family homes, townhomes, and condominiums.  Consequently, timeshares owners will have a more difficult time selling their fractional interests in their timeshare units, and profitably renting them, making other types of real estate ownership such as ownership of homes and condominiums more attractive.

Moreover, timeshare resorts are predominantly owned by international hotel and resort companies.  The resort companies that own timeshare properties will also have a difficult time selling timeshares to their predominantly non-resident customer base due to the increased costs

---

[35] *Bacchus Imports, Ltd. v. Dias*, 468 U.S. 263, 268 (1984) (citing *Boston Stock Exch. v. State Tax Comm'n*, 429 U.S 318 (1977) (additional internal cites omitted)).

imposed by the Timeshare Impact Fee.  The Timeshare Impact Fee will likely depress prices on timeshares units in the Virgin Islands as well as making them more difficult to sell.

Local real estate projects selling deeded interests in single-family homes, townhomes or condominiums are much more likely to be owned by local interests.  In establishing the Timeshare Impact Fee, the Virgin Islands placed a significant burden on timeshare owners, thus providing a valuable benefits for owners of other types of real estate that tend to be locally owned, and it did so for the express purposes of disadvantaging foreign owners.  Under the Supreme Court's ruling in *Bacchus Imports*, the discrimination created by the Timeshare Impact Fee favoring local real estate interests violates the Commerce Clause.[36]

      2.      The Timeshare Impact Fee is Not Fairly Related to Governmental Services Received.

            (a)      The Timeshare Impact Fee is Duplicative of Real Property Taxes Paid by Timeshare Owners

The fourth prong of the *Complete Auto Transit* test requires that a tax on interstate commerce be fairly related to the governmental services being received by the taxpayers subject to the tax.  The Timeshare Impact Fee fails this test because the Timeshare Impact Fee is duplicative of the property taxes that non-resident timeshare owners already pay for the privilege of owning real property in the Virgin Islands.

The concept of "ownership" of real and other property has been described as possessing or having a bundle of sticks or rights with respect to that property.  *See, U.S. v. Craft*, 535 U.S. 274 (2002) (The bundle of rights that are inherent in property ownership include the right to use the property, to earn income from it, and the right to exclude others from the property.)  *See also,*

---

[36] Notably, the Virgin Islands Government does not, and could not argue that the Timeshare Impact Fee is a compensatory tax that merely evens out the burden between local and foreign residents.  *See Fulton Corp. v. Faulkner*, 516 U.S. 325, 332-333 (1996).

*Va. Historic Tax Credit Fund 2001 LP vs. C.I.R.*, 639 F.3d 129 (4th Cir. 2011) (a common idiom describes property as a bundle of rights — a collection of individual rights which when bundled together constitute property); *Rothensies v. Fidelity-Philadelphia Trust Co.*, 112 F.2d 758 (3d. Cir. 1940) (the fee in real estate is the total bundle of rights held by the owner with respect to the land.)

The Government imposes real property taxes on non-resident timeshare owners at the highest mil rate of any class of real property — nearly four times that applicable to residential real property.  Thus, the timeshare owner already pays for the government services that the Virgin Islands contends it provides to timeshare owners.  The "use" of the timeshare is one of the rights a timeshare owner has by virtue of his or her ownership of the timeshare unit; it is one of the sticks in his or her "bundle of rights."   In imposing the Timeshare Impact Fee, the Virgin Islands is essentially imposing a second tax — an occupancy tax — on the timeshare owner for the privilege staying in his or her own property.

We presume that the Government properly set the rate for the real property taxes charged to timeshare owners, and that those rates are sufficient to pay for the privilege of using their property and for receiving government services associated with that privilege.  In imposing a second tax for each day a timeshare owner uses that property, the Government is singling out a group made up almost exclusively of non-residents to pay a tax burden that is not shared by residents.

Imagine if the Virgin Islands attempted to impose a "similar" tax on resident home owners, perhaps called the Homeowners Impact Fee.  In addition to charging local resident home owners real estate property taxes, the Virgin Islands would charge a $25 per day fee for the homeowner to use his or her home.  One can imagine the uproar that such a tax would generate.

14

The use of property is an inherent right that the owner of such property possesses.  In applying both a property tax and a use tax on the timeshare owners, the Government is improperly taxing the same transaction twice, and thus impermissibly overtaxing timeshare owners in violation of the fourth prong of the *Complete Auto Transit* test.

> (b)    The Timeshare Impact Fee Bears No Relation to the
>        Government Services Provided

One of the ways in which states, and in this case, a territory attempts to justify a levy against a particular group is to label it a "fee" rather than a tax.  When a state or local government charges a user fee for specific government services, rather than a general revenue tax, the fee is evaluated under the fourth prong of the *Complete Auto Transit* test by determining whether the fee is commensurate with the government services being provided.[37] In *Am. Trucking Ass'n, Inc. v. Scheiner*, 483 U.S. 266, 291 (1987), the Supreme Court invalidated a Pennsylvania tax on trucking because it did "not vary directly with the miles traveled or some other proxy for the value obtained from the State."  The Timeshare Impact Fee suffers from the same flaw.

Based on the legislative history accompanying the enactment of the Timeshare Impact Fee, the Government justifies the imposition of the Timeshare Impact Fee as a fee for the services on timeshare owners for the use and stress that they put upon the Virgin Islands infrastructure and environment while using their timeshares and visiting the Virgin Islands.

When judged as a fee for governmental services, the Timeshare Impact Fee fails the test for two reasons: (1) the Government has admittedly not studied the impact that timeshare owners

---

[37] *See generally, Commonwealth Edison Co. v. Mont.*, 453 U.S. 609 (1981) distinguishing between "general revenue taxes", which are justified by the provision of general governmental services such as police and firefighting, from "user" fees for specific services for which the Supreme Court implied that the fees may be challenged as being out of proportion with costs of the government services provided.

have on the Virgin Islands infrastructure and environment, and (2) the Government is using the Timeshare Impact Fee to pay for items that do not relate to the impact of timeshare owners on the infrastructure and environment.

Under the Timeshare Impact Fee legislation, the Bureau of Economic Research in collaboration with the Post Audit Division is required to conduct the Study on the impact of timeshare owners on the infrastructure and environment of the Virgin Islands within two years of the enactment of the Timeshare Impact Fee.[38]  The Study has yet to be conducted.

The U.S. Virgin Island Government admittedly does not know the impact of timeshare owners on the infrastructure and environment of the Islands because they have not yet performed the Study to assess those effects.  Accordingly, the Timeshare Impact Fee was set at an arbitrary amount that has nothing to do with the impact that timeshare owners have on the Virgin Island's infrastructure and environment.  Moreover, presumably timeshare owners as a group would have no more impact on the environment or infrastructure than any other visitors to the Virgin Islands, who are not subject to a similar daily fee.

The legislation sets forth other uses for the Timeshare Impact Fee than for paying for the impact of timeshare owners on the infrastructure and environment of the Virgin Islands.  The legislation states that the proceeds from the Timeshare Impact Fee will be allocated as follows: (a) 15 percent of the revenues will be allocated to the Virgin Islands Tourism Revolving Fund, (b) for the years 2017 through 2021, 85 percent will be allocated to the General Fund, (c) for the years 2022 and 2023, 40 percent is to be allocated to the General Fund and 45 percent to the VIESA Contingency Reserve Account, and (d) for 2024 and thereafter 85 percent will be

---

[38] *Supra* note 3.

allocated to the General Fund.[39]  The VIESA Contingency Reserve funds a negotiated litigation settlement of the Virgin Islands' Government in a labor dispute with government workers.[40] Clearly the proceeds from the Timeshare Impact Fee are not being used to pay for the impact of timeshare owners on the infrastructure and environment of the Territory, but are funding the Virgin Islands Government's general revenue needs including funding the settlement of litigation with government employees for back wages.

The Timeshare Impact Fee is not commensurate with governmental services rendered to timeshare owners and therefor violates the fourth prong of the *Complete Auto Transit* test.

### B.    The Timeshare Impact Fee Violates the Equal Protection Clause

The Timeshare Impact Fee violates the Equal Protection Clause of the United States Constitution. The Equal Protection Clause set forth in the 14th Amendment to the United States Constitution prohibits any state from depriving a citizen of "equal protection of the laws."  The Supreme Court has interpreted the Equal Protection Clause to prevent states from making unreasonable classifications and using those classifications to improperly discriminate against a class of citizens.[41]

States are not, however, prevented from making reasonable classifications, and are allowed great discretion in making classifications for tax purposes.[42]  If the classification created by the state is not a suspect class that creates heightened scrutiny,[43] the state's classification will be judged under the lesser "rational basis" standard to

---

[39] *Supra* note 1.
[40] *Supra* note 2.
[41] *See, Adams Express Co. v. Ohio State Auditor*, 165 U.S. 194 (1897); *Perini Corp. v. Massachusetts Commissioner of Rev.*, 647 N.E.2d 52 (Mass. 1995).
[42] *Lehnhausen  v. Lake Shore Auto Parts Co.*, 410 U.S. 356, 359 (1973).
[43] *See Plyler v. Doe*, 457 U.S. 202 (1982) (establishing that claims under the Equal Protection Clause are subject to three levels of scrutiny depending on whether the claim involves a suspect class, such as race or religion, or a fundamental right).

determine if the disparate treatment between the identified classes satisfies the Equal

Protection Clause.[44] Discrimination in taxation that favors domestic business and

residents over foreign ones, however, generally flunks that standard.[45]

In evaluating state tax provisions under the Equal Protection Clause, courts look

to whether (1) the state has a legitimate state purpose for enacting its tax statute, and (2)

the challenged classification promotes that state purpose.[46]

For example, in *Williams v. Vt.*,[47] the Supreme Court struck down a Vermont use

tax on cars purchased outside the state.  Vermont, like many states, provided a credit for

residents who purchased cars outside the state for any state tax that they paid in the state

where they purchased their vehicle.  Vermont, however, did not provide such a credit for

individuals who were not residents when they purchased their cars, but subsequently

moved into the state and were subjected to the use tax.  In ruling that the Vermont use tax

violated the Equal Protection Clause, the Court stated: "We can see no relevant difference

between the motor vehicle registrants who purchased their cars out-of-state while they

were Vermont residents, and those who only came to Vermont after buying a car

elsewhere.  To free one group and not the other from the otherwise applicable tax burden

violates the equal protection clause."[48]

In this case, the Virgin Islands Governor and Legislature intentionally targeted timeshare

owners because they are almost exclusively non-residents.  The contemporaneous statements

---

[44] *Exxon Corp. v. Eagerton*, 462 U.S. 176 (1983).

[45] *See, e.g. Metro. Life Ins. Co. v. War*d, 470 U.S. 869, 878 (1985); *WHYY, Inc. v. Borough of Glassboro*, 393 U.S. 117 (1968).

[46] *W. & S. Life Ins. Co. v. State Bd. of Equalization*, 451 U.S. 648 (1981).

[47] *Williams v. Vt.,* 472 U.S. 14 (1985).

[48] *Id.* at 27.

made during the consideration and enactment of the Timeshare Impact Fee clearly establish the discriminatory intent.

We will not repeat all of the statements made, but the one comment in the Bill Summary is particularly pertinent to this analysis.  It states: "Under current law, there is no financial mechanism, **save a real property assessment**, for recouping the costs to the Territory of the infrastructure necessary to support the presence of so many **welcomed visitors and timeshare owners.**"[49]  The Bill Summary is enlightening because it verifies two things, (1) the Virgin Islands already subjects timeshare owners to property taxes for the privilege of owning their real property interests, and (2) the Virgin Islands legislature intended to impose the Timeshare Impact Fee on "welcomed visitors" — just another term for non-residents.

As stated above, the Timeshare Impact Fee is an extra or "double" property tax on timeshare owners who already pay real estate taxes at the highest mil rate of any classification of real property in the Virgin Islands.  The "use" of real property is one of the bundle of rights that comes with ownership.  Thus, timeshare owners are already paying for the privilege of owning their timeshare units, the benefit of any government services, and any impact on the environment and infrastructure that goes along with their ownership of the timeshare units in the Virgin Islands.   Imposing a use tax on this group of non-residents merely creates an extra or double tax that is not imposed on residents.  As such, this tax improperly discriminates against non-residents and has no rational basis for this discrimination.  Like the use tax in *Williams v. Vermont* it must be struck down as violating the Equal Protection Clause.

Even if the Court were to look at the classification as timeshare owners versus other real property holders in the Virgin Islands, the Timeshare Impact Fee does not hold up under the

---

[49] *Supra* note 10.

Equal Protection Clause.  If we ignore the deliberate attempt by the Governor and Legislature to discriminate against non-residents by using timeshare ownership as a proxy, and just look at timeshare owners as a group being subject to the Timeshare Impact Fee, there is still no rational basis to select one group of real property owners to subject them to double taxation for their property ownership.

In *Road Improvement Dist. No. of Franklin Cty. Ark. v. Mo. Pac. Railroad Co.*,[50] the Supreme Court determined that a special tax levied in Franklin County, Arkansas was discriminatory against the Missouri Pacific Railroad because the Railroad's assessment was on both real *and* personal property within the county, while all others were assessed only on their real property within the county.  In finding that the Franklin County tax violated the Equal Protection Clause, the Supreme Court stated: "The assessment to the railroad is not based on real property alone, but also on rolling stock and other personalty valued at $52,465, while all other assessments are confined to real property.  In this there is an obvious and unreasonable discrimination."[51]

In enacting the Timeshare Impact Fee, the Virgin Islands went even further in its discrimination than *Franklin Cty. Ark.*; the Virgin Islands placed a separate tax on timeshare owners that is not imposed on any other class of real property owner in the territory.  Timeshare owners are already subject to real estate property taxes at the highest mil rate imposed on any class of real property; the Government has gone beyond the pale in now creating a new, second tax, imposed on timeshare owners alone.  What makes this more insidious is that the sole justification for imposing this second tax is that they are mostly non-residents, or as the Virgin Islands likes to call them "welcome visitors".

---

[50] *Road Improvement Dist. No. of Franklin Cty. Ark. v. Mo. Pac. Railroad Co.*, 274 U.S. 188 (1927).
[51] *Id.* at 193.

As discussed above, if the Governor and Legislature attempted to impose a "use" tax on resident home owners in the Virgin Islands, there would likely be a taxpayer revolt. The Timeshare Impact Fee intentionally discriminates against non-residents and has no rational justification. It cannot stand under the Equal Protection Clause.

### C.    The Timeshare Impact Fee Violates the Privileges and Immunities Clause

The Privileges and Immunities Clause provides: "[t]he Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States."[52]  In one of the leading cases on the Privileges and Immunities Clause, the Supreme Court stated in *Ward v. Maryland:*[53]

> …these words are words of comprehensive meaning, but it will be sufficient to say that the clause plainly and unmistakably secures and protects the rights of a citizen of one State to pass into any other State of the Union for the purpose of engaging in lawful commerce, trade, or business without molestation; to acquire personal property; **to take and hold real estate,** to maintain actions in the courts of the State, **and to be exempt from higher taxes or excises than are imposed by the State upon its own citizens.**[54] (emphasis added).

In *Ward*, the state of Maryland imposed a license or fee for out-of-state vendors to sell in Maryland that was set at twice the rate that the state charged resident vendors. The Supreme Court properly determined the Maryland statute discriminated against non-residents and, thus, violated the Privileges and Immunities Clause.

More recently, the Supreme Court ruled that a New York state income tax provision that denied non-residents alimony deductions that were allowed to residents violated the Privileges and Immunities Clause.[55]  While discriminations against non-residents is not a per se violation of the Privileges and Immunities Clause, the Supreme Court set forth the following standard: "(i)

---

[52] U.S. Const., art. IV, § 2, cl. 1.
[53] *Ward v. Maryland.*, 79 U.S. 418 (1870).
[54] *Id.* at 430.
[55] *Lunding v. N.Y. Tax Appeals Tribunal,* 522 U.S. 287 (1998).

there must be a substantial reason for the difference in treatment, and (ii) the discrimination practiced against non-residents bears a substantial relationship to the State's objective."[56]

The Timeshare Impact Fee clearly violates the Privileges and Immunities Clause because the Virgin Islands Government is unable to identify a "substantial reason" for treating non-residents differently from residents and a "substantial relationship" between its discrimination against non-residents and its apparent objective, bolstering tax revenues. Instead, it simply taxes non-resident timeshare owners more than resident real property owners. In doing so, the territorial Government improperly interferes with the rights of non-residents to acquire and hold real property in the Virgin Islands through timeshare interests by making it more expensive in charging a second type of property tax for the "use" of property in additional to the real property taxes already imposed on timeshare owners.

The Timeshare Impact Fee is more egregious than the fee charged in *Ward*. In *Ward*, Maryland was charging its residents a similar but lower fee; in contrast, the Virgin Islands is imposing the Timeshare Impact Fee on timeshare owners, a group made up almost exclusively of non-residents, while no similar fee is imposed upon other owners of real property, including resident home owners. As the Supreme Court stated in *Ward*, states and local governments cannot impose higher taxes or excises on non-residents than those imposed on residents.

The Timeshare Impact Fee fails the test set forth in *Lunding*. The Governor and Legislature made it very clear that their intention in enacting the Timeshare Impact Fee was to impose a tax on "welcomed visitors", or non-residents that would not be borne by residents. Discriminating against non-residents is not a valid purpose, and the Virgin Islands has no other justification for the Timeshare Impact Fee.

---

[56] *Id.* at 298, citing *Sup. Ct. of N.H. v. Piper*, 470 U.S. 274, at 284 (1985).

The Virgin Islands Government's imposition of the Timeshare Impact Fee with its intentional discrimination against non-residents also violates the Privileges and Immunities Clause and cannot stand.

### D.     The Government's Reliance on *Frank* is Misplaced.

The Defendant relies upon the Third Circuit decision in *Frank v. Gov't of the V.I.*[57] to argue that Plaintiff's case should be dismissed.  Defendant's reliance on *Frank* is, however, misplaced because there are substantial factual differences in this case, and thus, the *Frank* decision is irrelevant to the matter before the court.

*Frank* involved the rate of real property tax that the Virgin Islands imposed on timeshare units.  Courts have stated that state, local, (and in this case territorial) governments have great leeway in taxing different classes of property at different rates.[58]

But this case is not about rates between separate classes of property.  In contrast to *Frank*, this matter involves the Timeshare Impact Fee which constitutes a second tax on Virgin Islands timeshare owners, a group made up almost exclusively of non-residents.  It is one thing to set a different rate for real property taxes on a distinct class of property.  It is quite another, however, to impose a second property tax on Virgin Islands timeshare owners with the stated intention of discriminating against non-residents.

Moreover, the plaintiff in *Frank* did not present sufficient evidence to establish that the real property tax at issue was discriminatory in its intent and application.  Frank presented only one letter from then Governor, John P. De Jongh, evidencing some discriminatory intent.[59]  In contrast, Plaintiff has demonstrated by the statements of the Governor, the Legislature, and the

---

[57] *Frank v. Gov't of the V.I.,* 563 Fed.Appx. 169 (Mem) (3d. Cir. 2014).
[58] See, *Lehnhausen v. Lake Shore Auto Parts Co.* 410 U.S. 356 (1973); *Brown Forman Co. v. Kentucky*, 217 U.S. 563 (1910).
[59] *Frank v. Gov't of the V.I.*, 2012 WL 611373 (D.V.I.  Feb. 23, 2012).

Bill Summary, that the Government of the Virgin Islands specifically intended to discriminate against non-residents in enacting the Timeshare Impact Fee.  Plaintiff has properly pleaded and intends to prove at trial that the Timeshare Impact Fee does in fact discriminate against non-residents in effect because it targeted a group that is almost exclusively comprised of non-residents.

Because Plaintiff can establish that the Timeshare Impact Fee intentionally discriminates against non-residents and is discriminatory in its application, *Frank* does not control and is not relevant to this case.

It is important to note that the District Court in *Frank* denied a similar motion to dismiss under Rule 12(b)(6) by the Virgin Islands Government and allowed the case to proceed to trial.

### E.      ARDA-ROC Has Association Standing To Sue On Behalf Of Its Members

Defendant's memorandum of law misstates the criteria for an association to have standing to sue.  The standards for an association to sue are as follows: (1) the association's members would otherwise have standing in their own right,[60] (2) the interest of the association in seeking to protect is germane to the associations purpose, and (3) neither the claim asserted or the requested relief, requires participation of individual members in the lawsuit.[61]  An association that satisfied this standard has demonstrated Article III standing.

ARDA-ROC, as an association of timeshare owners, has standing in this matter.  ARDA-ROC has pleaded and can establish that it has hundreds of members who own timeshare units in the Virgin Islands and thus, who are affected by the Timeshare Impact Fee.  ARDA-ROC has also pleaded and can establish that one of its purposes is to advocate on behalf of timeshare

---

[60] The Defendant's Memorandum of Law in Support for Defendant's Motion to Dismiss, inadvertently states that the first factor for association standing is that the "members would otherwise have **no** standing to sue in their own right… ."  *See* Defendant's Memorandum at p. 11.
[61] *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333 (1977).

owners, such as its members who own timeshares in the Virgin Islands, to prevent them from being subject to burdensome regulations and taxes, like the Timeshare Impact Fee, that adversely affect their ownership of timeshare units and the timeshare industry in general.  Finally, ARDA-ROC is not seeking specific monetary damages, but rather to have the Timeshare Impact Fee declared unconstitutional and to enjoin the law from being further enforced.  Thus, the remedies being sought do not require the participation of individual members.

ARDA-ROC meets the requirements under *Hunt*, and therefore has associational standing in this case contrary to Defendant's contention.

## F.      Defendant's Other Standing Issues are Meritless

In addition to arguing that Plaintiff lacks associational standing, Defendant also argues that Plaintiff (1) does not have Article III standing, and (2) lacks prudential standing.

Defendant's additional assertions on standing are not well grounded.   Plaintiff has established that it has associational standing to sue on behalf of its members — timeshare owners who are subject to the Virgin Islands Timeshare Impact Fee.  Plaintiff is challenging the constitutionality of the Timeshare Impact Fee, which satisfies the case or controversy requirement.[62]   Plaintiff therefore has Article III standing in this matter.

Plaintiff also has prudential standing.  The requirements for prudential standing are that (1) the litigant is not enforcing another person's legal rights, (2) the case involves generalized grievances more appropriately addressed by other representative branches, and (3) the complaint must fall within the zone of interest.[63]

---

[62] See, *Ex Parte Young*, 209 U.S. 123 (1908).
[63] *Common Cause of Pa. v. Pa.*, 558 F.3d 249 (3d. Cir. 2009).

Plaintiff, as an association of timeshare owners representing Virgin Islands timeshare owners subject to the Timeshare Impact Fee stands in its members' place in this litigation. ARDA-ROC represents timeshare owners who are subject to the Timeshare Impact Fee, and it has associational standing to sue on behalf of its members.  ARDA-ROC satisfies all of the required elements for prudential standing because it stands in the same position as its members with respect to the Timeshare Impact Fee, the constitutional challenge to the Timeshare Impact Fee is a real case or controversy, and the matter falls within ARDA-ROC's zone of interest as an association representing its members subject to the Fee.

### G.       The Tax Anti-Injunction Act Does Not Apply

       1.       The Third Circuit's *Pan Am. World Airways* Decision Controls and Is Binding on this Court.

Defendant states that the Tax Injunction Act, 28 USCA § 1341, should be applied to prohibit the District Court for the Virgin Islands from having jurisdiction over this case. Defendant recognizes that the Third Circuit Court of Appeals in *Pan Am. World Airways, Inc. v. Gov't of the V.I.*,[64] ruled that the Tax Injunction Act does not apply to the Virgin Islands.  That should be the end of the matter as *Pan Am. World Airways* is obviously binding on this Court.

Yet Defendant argues that the *Pan Am. World Airways* decision has been undercut by a more recent decision from the Third Circuit.  Defendant then cites the following language from *Berne Corp. v. Gov't of the V.I.*[65] to support its position that the Tax Injunction Act should apply to deprive this Court of jurisdiction in this matter:

> The Senate Report does not specifically reference the Tax Injunction Act, but it appears to align with our general understanding of the purpose of the

---

[64] *Pan Am. World Airways, Inc. v. Gov't of the V.I.*, 459 F.2d 387 (3d. Cir. 1972).
[65] *Berne Corp. v. Gov't of the V.I.,* 570 F.3d 130 (3d. Cir. 2009).

Tax Injunction Act.  As the United States Supreme Court stated in *Rosewell v. Lasalle National Bank*, 'this legislation [the Tax Injunction Act] was the first and foremost vehicle to limit drastically federal jurisdiction so important a local concern as the collection of taxes.[66]

The Third Circuit continued: "***Assuming*** the Tax Injunction Act applies, federal courts still could have jurisdiction to decide an otherwise properly pleaded claim as to whether a territorial government provided a plain, speedy, and efficient remedy."[67]   As Defendant admits, the Third Circuit did not overturn *Pan Am. World Airways* in *Berne Corp*.  In fact, the Third Circuit ruled in *Berne Corp.* that the district court had properly ruled that a plain, speedy, and efficient remedy was not available in the Virgin Islands and did **not** in fact apply the Tax Injunction Act to prevent federal district court jurisdiction in *Berne Corp*.

It would take a much more definitive statement to conclude that the Third Circuit had overturned its long-standing precedent in *Pan Am. World Airways* that the Tax Injunction Act does not apply in the Virgin Islands.  In fact, Defendant admits as much by making the plea in its memorandum that: "The time has come for the Virgin Islands to take full responsibility for enforcing its tax laws, and for Virgin Islands to shoulder full responsibility for protecting taxpayers, including nonresidents."[68]   Contrary to the Defendant's plea to this Court, it is not a District Court's role to determine that a long-standing precedent like *Pan Am. World Airways* should not be applied until the Third Circuit Court of Appeals makes that definitive decision.

*Pan Am. World Airways* has not been overturned by the Third Circuit, and thus, the Tax Injunction Act does not apply in the Virgin Islands.  Accordingly, the District Court has proper

---

[66] *Id.* at 136-137.
[67] *Id.* at 137.
[68] Defendant's Memorandum of Law at p. 15.

jurisdiction over this case which cites federal claims involving the Commerce, Equal Protection, and Privilege and Immunities Clauses of the United States Constitution.

### H. Even if the Tax Injunction Act Were to Apply, the Superior Court of the Virgin Islands Court Does Not Provide A Plain, Speedy, and Efficient Remedy

Simply stated, there is no plain, speedy, and efficient remedy available in this case either administratively, or through the Superior Court of the Virgin Islands. In limited research undertaken to respond to the Government's Tax Injunction Act argument, it appears that there are significant challenges to pursuing relief in the Superior Court, and that the Government is aware of those challenges.

In June 2016, Governor Mapp attempted to replace the Presiding Judge of the Superior Court, Judge Michael C. Dunston, with Judge Harold A. Willocks. According to an article in The Virgin Islands Consortium,[69] this appeared to be an unprecedented, extraordinary step for which there was some doubt about the Governor's ability to make the decision. In taking this extraordinary step, Governor Mapp stated: "The Superior Court remains lethargic, non-functioning, and simply, in 2016, a paper operation."[70]

In addition, a 2015 report authorized by the Chief Justice of the Virgin Islands Supreme Court stated the following:

> [I]f I had to summarize the state of the judiciary, it would be with one word: lagging. Despite many advances over the past decade that were designed to improve the administration of justice—including the establishment of the Supreme Court and the creation of the Magistrate

---

[69] Ernice Gilbert, *In Rare Use of Law, Mapp Removes Judge Dunston as Presiding Judge of the Superior Court*, The Virgin Islands Consortium (Jun. 17, 2016), http://viconsortium.com/politics/in-rare-use-of-law-mapp-removes-judge-dunston-as-presiding-judge-of-the-superior-court/

[70] *Id.*

> Division of the Superior Court—the Virgin Islands Judiciary lags behind its peers in the areas that matter most. Civil cases in both districts of the Superior Court languish without resolution for years; one recent newspaper article estimated that a civil case goes to trial in 10 or 11 years on average. Even simple matters, such as an internal review by a Superior Court judge of a decision rendered by a Superior Court magistrate in a small claims case, may take years to resolve. The lag also extends to criminal cases, where "justice delayed, justice denied" appears to be the norm, rather than the exception.  Over the past several years, both the news media and the political branches of government have recognized the backlog of cases in the Superior Court as a growing crisis. In fact, the extent of the problem is not fully known. In fact, because the Superior Court has not implemented electronic public access to case files, we have no way of knowing the exact size of the backlog, and are left to rely on anecdotes and estimates.[71]

The U.S. Virgin Island Report and the action by Governor Mapp in 2016 along with his statements indicate that the Superior Court of the Virgin Islands does not have a reputation for providing speedy and efficient relief.  By its own estimates, civil cases may take ten or eleven years to get to trial.  However, to the extent that the Court is not persuaded that *Pan Am. World Airways* is binding precedent, and the Government's own admissions (through the Governor and the Chief Justice of the Supreme Court)  are not sufficient evidence to withstand a Tax Injunction challenge, Plaintiff will seek discovery as to the efficacy and timeliness of the Superior Court of the Virgin Islands in order to establish that the local courts are not capable of providing a plain, speedy, and efficient remedy in this case even if the Tax Injunction Act were to apply.

---

[71] Rhys S. Hodge, Chief Justice, *State of the Judiciary*, Virgin Islands Ct. Judiciary Sys. Ann. Rep. 2015 at pp. 8-9, attached as **Exhibit 1**.

## VI.     CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendant's motions to dismiss under Rule 12(b)(1) and 12(b)(6), and allow Plaintiff to proceed with this action and develop an evidentiary record to support its claims that the Timeshare Impact Fee violates the Commerce, Equal Protection, and Privileges and Immunities Clauses of the U.S. Constitution.

Respectfully submitted:

Date:  August 18, 2017                      /s/ Chad C. Messier
                                            _____
                                            CHAD C. MESSIER
                                            Dudley, Topper & Feuerzeig, LLP
                                            1000 Frederiksberg Gade
                                            P.O. Box 756
                                            St. Thomas, Virgin Islands 00804
                                            Telephone: 340-774-4422
                                            Fax: 340-715-4400
                                            Email: CMessier@dtflaw.com

                                            Kevin Johnson, Esq.
                                            Baker Hostetler LLP
                                            12th Floor
                                            Cira Centre 2929 Arch Street
                                            Philadelphia, PA 19104
                                            Telephone: 215-564-2728
                                            Fax: 215-568-3439
                                            kjohnson@bakerlaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that on the 18th day of August, 2017, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

> HUGH A. GREENTREE, ESQ.
> ASSISTANT ATTORNEY GENERAL
> V.I. Department of Justice
> Office of the Attorney General
> 34-38 Kronprindsens Gade
> GERS Building, 2nd Floor
> St. Thomas, U.S.V.I. 00802
> Tel: (340) 774-5666
> hugh.greentree@doj.vi.gov

/s/ Chad C. Messier
_____

31