|  |  |  |
|---|---|---|
| The Kimberly Stonecipher-Fisher Revocable Living Trust; Kimberly Stonecipher-Fisher, trustee; and American Resort Development Association – Resort Owners' Coalition, | ) ) ) ) ) ) ) | |
| Plaintiff, | ) ) | Civil No. 2017-32 |
| v. | ) ) | |
| Government of the Virgin Islands, | ) ) ) ) | |
| Defendant. | ) ) | |

**ATTORNEYS:**

**Kevin Johnson**
Baker & Hostetler LLP
Philadelphia, PA
**Chad C. Messier**
Dudley Topper & Feuerzeig
St. Thomas, VI
    *For the Kimberly Stonecipher-Fisher Revocable Living Trust; Kimberly Stonecipher-Fisher, Trustee; and the American Resort Development Association-Resort Owners' Coalition,*

**Claude E. Walker, Attorney General**
**Ariel Marie Smith-Francois, AAG**
Virgin Islands Department of Justice
St. Thomas, VI
    *For the Government of the Virgin Islands.*

## ORDER

**GÓMEZ, J.**

Before the Court is the motion of the Government of the Virgin Islands to dismiss the second amended complaint filed in the above captioned matter.

## FACTUAL AND PROCEDURAL HISTORY

The Kimberly Stonecipher-Fisher Revocable Living Trust (the "Trust") is a trust created under Missouri law. Kimberly Stonecipher-Fisher (the "Trustee") is the trustee of the Trust and is a resident of Missouri. The Trust owns a timeshare interest in the Frenchman's Cove resort in St. Thomas, U.S. Virgin Islands.

The Trust is a member of the American Resort Development Association-Resort Owners' Coalition ("ARDA-ROC"). The American Resort Development Association (the "Association") is a not-for-profit corporation that serves as an industry group for the timeshare industry. The Association is based in Washington D.C. It represents timeshare owners through ARDA-ROC.

ARDA-ROC is a separate not-for-profit corporation also based in Washington D.C. ARDA-ROC is an association that represents the interests of timeshare owners, including owners of timeshares in the U.S. Virgin Islands.

On March 22, 2017, the Governor of the U.S. Virgin Islands, Kenneth Mapp, signed the Virgin Islands Revenue Enhancement and Economic Recovery Act of 2017 ("the Act") into law. That Act imposes a $25 per day occupancy fee (the "timeshare fee") on the owners of timeshare units in the Virgin Islands. The fee took effect on May 1, 2017.

Revenues from the timeshare fee are to be allocated in the following manner: (1) 15% to the Virgin Islands Tourism Advertising Revolving Fund, and (2) 85% to the General Fund from the present through 2021.[1]

On May 1, 2017, ARDA-ROC filed a two-count complaint in this Court naming the Government of the Virgin Islands (the "Government") as a defendant and seeking: (1) a declaration that the timeshare fee is unconstitutional, and (2) an injunction barring collection of the timeshare fee. Count One alleges that the timeshare fee violates the Commerce Clause. Count Two alleges that the timeshare fee violates the Equal Protection Clause and the Privileges and Immunities Clause.

On June 22, 2017, the Government filed a motion to dismiss the complaint for lack of subject-matter jurisdiction and for failure to state a claim. ARDA-ROC then filed an amended complaint (the "Amended Complaint") on July 12, 2017, as permitted under Federal Rule of Civil Procedure 15. *See* Fed. R. Civ. P. 15 (providing in pertinent part: "A party may amend its pleading once as a matter of course within … 21 days after service of a motion under Rule 12(b)").

---

[1] From 2022 through 2023, the portion of the revenues from the timeshare fee allocated to the General Fund decreases to 40%, while 45% of the revenues are allocated to the VIESA Contingency Reserve Account. From 2024 forward, the portion of the revenues from the timeshare fee allocated to the General Fund returns to 85%.

Thereafter, the Government filed a motion to dismiss the Amended Complaint for lack of subject-matter jurisdiction and for failure to state a claim.

On December 19, 2017, this Court granted the Government's motion to dismiss due to ARDA-ROC's failure to adequately plead standing. That order granted ARDA-ROC leave to file an amended complaint no later than 3:00 P.M. on January 5, 2018.

On January 5, 2018, before 3:00 P.M., the Trust, the Trustee, and ARDA-ROC filed a second amended complaint (the "Second Amended Complaint") in this matter adding the Trust--a member of ARDA-ROC--and the Trustee as plaintiffs.

The Government now moves to dismiss the Second Amended Complaint for lack of subject-matter jurisdiction and for failure to state a claim.

## **DISCUSSION**

### A. Federal Rule of Civil Procedure 12(b)(1)

A party may bring either a facial or a factual challenge to the Court's subject-matter jurisdiction pursuant to Rule 12(b)(1). *Gould Electronics, Inc. v. United States,* 220 F.3d 169, 178 (3d Cir.2000). In considering a facial challenge under Rule 12(b)(1), all material allegations in the Complaint are taken as true. *See Taliaferro v. Darby Twp. Zoning Bd.,* 458 F.3d 181, 188 (3d Cir.2006) (summarizing the standard for facial

attacks under Rule 12(b)(1) as "whether the allegations on the face of the complaint, taken as true, allege facts sufficient to invoke the jurisdiction of the district court"); *Mortensen,* 549 F.2d at 891 (explaining that, in ruling upon a facial attack under Rule 12(b)(1), "the court must consider the allegations of the complaint as true"). Indeed, the "standard is the same when considering a facial attack under Rule 12(b)(1) or a motion to dismiss for failure to state a claim under Rule 12(b)(6)." *Petruska v. Gannon Univ.,* 462 F.3d 294, 299 (3d Cir.2006).

"[A] factual challenge[ ] attacks the factual allegations underlying the complaint's assertion of jurisdiction, either through the filing of an answer or 'otherwise presenting competing facts.'" *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016) (original alterations omitted) (quoting *Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014)); *see also Berardi v. Swanson Mem'l Lodge No. 48 of the Fraternal Order of Police*, 920 F.2d 198, 200 (3d Cir. 1990) (holding that the factual basis for jurisdictional allegations in a complaint could be disputed before an answer was served). Where a motion to dismiss factually challenges the district court's jurisdiction, the court is not confined to the allegations in the complaint, but can consider other evidence, such as

affidavits, depositions, and testimony, to resolve factual
issues related to jurisdiction. *See Mortensen v. First Fed. Sav.
and Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977) (stating that
because at issue is the very power of the trial court to hear
the case, a court is free to weigh evidence beyond the
allegations in the complaint). Additionally, in evaluating a
motion to dismiss, the court may consider any "matters
incorporated by reference or integral to the claim, items
subject to judicial notice, matters of public record, orders,
and items appearing in the record of the case." *Buck v. Hampton
Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (internal
quotation marks omitted). Furthermore, "no presumptive
truthfulness attaches to plaintiff's allegations" and "the
plaintiff will have the burden of proof that jurisdiction does
in fact exist." *Id.*

## B. Federal Rule of Civil Procedure 12(b)(6)

When reviewing a motion to dismiss brought pursuant to
Federal Rule of Civil Procedure 12(b)(6), the Court construes
the complaint "in the light most favorable to the plaintiff*." In
re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 314 (3d Cir.
2010). The Court must accept as true all of the factual
allegations contained in the complaint and draw all reasonable
inferences in favor of the non-moving party. *Alston v. Parker*,

363 F.3d 229, 233 (3d Cir. 2004). "In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) cert. denied, 562 U.S. 1271, 131 S. Ct. 1607, 179 L. Ed. 2d 501.

A complaint may be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).

The Supreme Court in *Bell Atlantic v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007), set forth the "plausibility" standard for overcoming a motion to dismiss and refined this approach in *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). The plausibility standard requires the complaint to allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. A complaint satisfies the plausibility standard when the factual pleadings "allow[] the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). This standard requires showing "more than a sheer possibility that a defendant has acted unlawfully." *Id.* A complaint which pleads facts "'merely consistent with' a defendant's liability, … 'stops short of the line between possibility and plausibility of "entitlement of relief."'" *Id.* (citing *Twombly*, 550 U.S. at 557).

To determine the sufficiency of a complaint under the plausibility standard, the Court must take the following three steps:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

*Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010) (quoting *Iqbal*, 556 U.S. at 674, 679).

## **ANALYSIS**

### A. Jurisdiction and Principles of Tax Comity

The Government of the Virgin Island argues that the Tax Injunction Act ("TIA") precludes this Court from asserting

jurisdiction because the Trust's challenges to the timeshare fee seek to invalidate a tax.

## 1. The Tax Injunction Act

The TIA provides that "[t]he district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." 28 U.S.C. § 1341.

By its explicit terms, the TIA bars injunctive relief. The Supreme Court has held that the TIA extends to declaratory relief. *See California v. Grace Brethren Church*, 457 U.S. 393, 408–11, 102 S. Ct. 2498, 2508–09, 73 L. Ed. 2d 93 (1982). The Supreme Court has not addressed whether the TIA bars the recovery of damages.

In *Great Bay Condominium Owners Association, Inc., et al. v. Government of the Virgin Islands et al.*, No. 2017-33, 2018 U.S. Dist. LEXIS 167921, at *35 (D.V.I. Sep. 28, 2018), this Court had occasion to address the application of the TIA and the tax comity doctrine in the Virgin Islands. In that case, Great Bay Condominium Owners Association, Inc., ("Great Bay") brought a complaint against the Government of the Virgin Islands and Marvin L. Pickering, Director of the Bureau of Internal Revenue, in his official capacity, challenging the constitutionality of

the timeshare fee. The Government moved to dismiss, asserting

that the TIA barred Great Bay's suit.

In considering the Government's motion, the Court analyzed

Third Circuit precedent regarding the applicability of the TIA

and principles of tax comity to the Virgin Islands. The

principle cases addressing the TIA and tax comity were *Pan Am.*

*World Airways, Inc. v. Duly Authorized Gov't of Virgin Islands*,

459 F.2d 387, 390-91 (3d Cir. 1972) ("*Pan American*"),

*Bluebeard's Castle, Inc. v. Gov't of Virgin Islands*, 321 F.3d

394 (3d Cir. 2003), and *Berne Corp. v. Gov't of the Virgin*

*Islands*, 570 F.3d 130 (3d Cir. 2009). After reviewing those

decisions, this Court stated

> In *Pan American*, the Third Circuit held that the TIA did
> not, by its terms, apply because: "no such notions of
> federalism as underlie limitations on the power of the
> federal district courts to enjoin certain state action
> are applicable to the territories." *See Pan Am. World*
> *Airways, Inc.*, 459 F.2d at 391. After the 1984 amendments
> to the Revised Organic Act, the Third Circuit suggested
> that the TIA might apply if the Virgin Islands were a
> state, *see Bluebeard's Castle, Inc.*, 321 F.3d at 397
> n.5--apparently recognizing that this Court now
> exercises the jurisdiction of an Article III district
> court.
>
> In *Berne*, the Third Circuit acknowledged its holding in
> *Pan American* and *Bluebeard's Castle* regarding the non-
> applicability of the TIA. *See Berne Corp.*, 570 F.3d at
> 136-37. It also considered the repeal of 48 U.S.C. §
> 1401a, which imposed federal restrictions on Virgin
> Islands's real property taxation. *Id*. It found that the
> congressional intent underlying that repeal "appears to
> align with our general understanding of the purpose of

the Tax Injunction Act." *Id.* at 137; *see also* S. Rep.
No. 110-19, at 1 (2007). Having reviewed *Pan American*,
*Bluebeard's Castle*, and the repealer, the *Berne* Court
did not squarely determine whether the view that the TIA
does not apply in the Virgin Islands remains valid.
Rather, the *Berne* Court seems to have acknowledged the
evolving legal landscape regarding the TIA in the Virgin
Islands and chose to resolve *Berne* without finding a
need to reassess the TIA's applicability in the Virgin
Islands.

*Great Bay*, 2018 U.S. Dist. LEXIS 167921, at *24-25.

The Court proceeded to discuss a change in the law
applicable to the Virgin Islands that potentially had
ramifications for the TIA's applicability in the Virgin
Islands:

At the same time, Congress's repeal of 48 U.S.C. § 1401a
arguably evinced an intent to treat the Virgin Islands
the same as any other state with respect to local
property tax collection. Indeed, the Senate Report
accompanying that repeal provides, in pertinent part,
that:

The 1936 statute has long outlived its usefulness
and now interferes with the Virgin Islands
ability to perform an essential governmental
function. The assessment and collection of real
property taxes is fundamentally a local
government issue with no Federal impact. No other
State, Territorial, or local government is
subject to such Federal restrictions. The
Revised Organic Act of 1954, as amended, confers
upon the people of the Virgin Islands full powers
of local self-government. The 1936 statute is an
anachronism that needs to be repealed.

S. Rep. 110-19, at 1-2.

From that report, the Third Circuit noted, that the
language in the Senate Report generally "align[s] with

… the purpose of the Tax Injunction Act." See Berne Corp, 570 F.3d at 137. The purpose of the TIA is to be "first and foremost a vehicle to limit drastically federal district court jurisdiction to interfere with so important a local concern as the collection of taxes." *Rosewell v. LaSalle National Bank*, 450 U.S. 503, 522, 101 S. Ct. 1221, 67 L. Ed. 2d 464 (1981). Given the language in the Senate Report, the Third Circuit's assessment of that language, and the purpose of the TIA, "to limit drastically federal district court jurisdiction to interfere with so important a local concern as the collection of taxes," *id.*, it is arguable that the TIA now applies in the Virgin Islands.

*Great Bay*, 2018 U.S. Dist. LEXIS 167921, at *25-26.

## 2. The Tax Comity Doctrine

Rather than resolve the question of whether the TIA now applies to the Virgin Islands--a question the Third Circuit has not yet revisited and disposed--the Court observed that it "need not resolve this issue if the tax comity doctrine applies with equal force to the claims in this case." *Id.* at *26. Indeed, the Supreme Court has held that when a plaintiff challenges a tax, principles of comity (the "tax comity doctrine") prevent district courts from granting injunctive or declaratory relief or awarding damages when the state provides remedies that are "plain, adequate, and complete." *Fair Assessment in Real Estate Ass'n, Inc. v. McNary*, 454 U.S. 100, 116, 102 S. Ct. 177, 186, 70 L. Ed. 2d 271 (1981) (damages); *Great Lakes Dredge & Dock Co. v. Huffman*, 319 U.S. 293, 297-302, 63 S. Ct. 1070, 1072-74, 87 L. Ed. 1407 (1943) (declaratory relief); *Matthews v. Rodgers*,

284 U.S. 521, 525–26, 52 S. Ct. 217, 219–20, 76 L. Ed. 447 (1932) (injunctive relief).

There is no significant difference between whether a remedy is plain, adequate, and complete and whether a remedy is plain, speedy, and efficient.[2] *See Fair Assessment in Real Estate Ass'n, Inc.*, 454 U.S. at 137 ("We discern no significant difference, for purposes of the principles recognized in this case, between remedies which are "plain, adequate, and complete," as that phrase has been used in articulating the doctrine of equitable restraint, and those which are "plain, speedy and efficient," within the meaning of § 1341."); *see also Rosewell v. LaSalle Nat. Bank*, 450 U.S. 503, 525 & n.33, 101 S. Ct. 1221, 1235, 67 L. Ed. 2d 464 (1981) (holding that not "every wrinkle of federal equity practice" addressing whether a remedy was plain, adequate, and complete was codified by Congress in the TIA, but further specifying that "prior federal equity cases" may be "instructive on whether a state remedy is 'plain, speedy and

---

[2] The Supreme Court has noted that the expansiveness of the comity doctrine renders the TIA somewhat superfluous. *Levin v. Commerce Energy, Inc.*, 560 U.S. 413, 432, 130 S. Ct. 2323, 2336, 176 L. Ed. 2d 1131 (2010). However, "[t]he … [TIA] was passed to plug two large loopholes [federal] courts had opened in applying the comity doctrine": (1) federal courts only considered whether a plain, adequate, and complete remedy was available in *federal court*; and (2) federal courts strictly construed whether a remedy was plain, adequate, and complete. *Id.* at n.3

At least one of those holes no longer exists. Federal courts applying the comity doctrine must now consider whether a plain, adequate, and complete remedy is available in state court. *See Fair Assessment in Real Estate Ass'n, Inc.*, 454 U.S. at 116.

efficient'"). Nevertheless, the comity doctrine, unlike the TIA, may be waived by the states. *Levin v. Commerce Energy, Inc.*, 560 U.S. at 432.

Unlike the TIA, the tax comity doctrine also prohibits federal courts from invalidating state tax provisions where such invalidation would increase, rather than decrease, state taxes. *See Levin v. Commerce Energy, Inc.,* 560 U.S. 413, 426, 130 S. Ct. 2323, 2332-33, 176 L. Ed. 2d 1131 (2010). A federal court weighs several factors:

> in deciding whether to refrain, based upon comity, from deciding such a case, namely whether: (1) the challenged law concerned "commercial matters over which" the state "enjoys wide regulatory latitude"; (2) the suit requires adjudicating "any fundamental right or classification" to which heightened scrutiny applies; (3) the state courts are "better positioned than their federal counterparts to correct any violation" and provide a remedy; and (4) more than one potential remedy could adequately redress the alleged constitutional defect.

*Z & R Cab, LLC v. Philadelphia Parking Auth.*, 616 F. App'x 527, 531 n.8 (3d Cir. 2015)(citing *Levin,* 560 U.S. at 431–32, 130 S.Ct. 2323).

Given that legal underpinning, the Court proceeded to consider whether the tax comity doctrine applies to the Virgin Islands. The Court ultimately concluded that:

> the Revised Organic Act and case law from the Third Circuit, this Court, and other courts counsel in favor

> of a holding that the tax comity doctrine applies to the
> territory under appropriate circumstances. Therefore,
> when plaintiffs file suit seeking injunctive or
> declaratory relief or damages with respect to a local
> tax imposed on them by the Virgin Islands Government,
> they may only proceed in this Court if: (1) Congress has
> entered the field and the plaintiffs are seeking to
> enforce such a federally-created right, or (2) a plain,
> adequate, and complete remedy is not available in the
> local courts.

*Great Bay*, 2018 U.S. Dist. LEXIS 167921, at *27-35.

Having determined that the tax comity doctrine applied, the

Court considered the precise issue of whether Virgin Islands

courts provide a plain, adequate, and complete remedy to a

challenge to the timeshare fee. Upon review of the legal

remedies available and the evidence presented by the parties,

including the deposition testimony of Valdamier Collens

("Collens"), the Virgin Islands Finance Commissioner, the Court

noted

> Under these circumstances, the Court is not satisfied
> that an adequate remedy is available in the local courts.
> The Commissioner of Finance has admitted that the Virgin
> Islands is in such dire financial straits that the
> payment of tax refunds is subject to the availability of
> funds and delayed for years. In addition, a judicial
> decision invalidating the timeshare fee could give rise
> to significant liability for the Virgin Islands
> government. Furthermore, no binding policy or law has

been identified that would require the payment of tax
refunds to be the first priority for the treasury.

*Great Bay*, 2018 U.S. Dist. LEXIS 167921, at *61.

Thus, the Court found that an adequate remedy is not
available in local courts for challenges to the
constitutionality of the timeshare fee. *Id*. at *61. Accordingly,
the Court exercised its jurisdiction over the claims challenging
the constitutionality of the timeshare fee. *Id*. at *62.

### 3. Issue Preclusion

The jurisdictional challenge decided by the Court in *Great
Bay*--that the tax comity doctrine precludes the Court from
asserting jurisdiction over the case--is precisely the same
challenge raised by the Government in this case. *Compare* Mem. in
Supp. of Defs.' Mot. To Dismiss, *Great Bay*, 3:17-cv-33, ECF No.
19, *with* Mem. in Supp. of Defs. Mot. To Dismiss, *The Kimberly
Stonecipher-Fisher Revocable Living Trust, et al. v. Government
of the Virgin Islands*, 3:17-cv-33, ECF No. 12. Given that that
jurisdictional challenge was adjudicated in *Great Bay*, the
assertion of the same jurisdictional challenge here, begs the
question whether the Court must again address that challenge
here, or whether further adjudication of the issue is precluded.

To resolve that question the Court must consider the conditions that must be satisfied to justify issue preclusion.

The Second Restatement of Judgments articulates the general rule of issue preclusion as follows: "When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim." Restatement (Second) of Judgments § 27 (1982). The Third Circuit has "consistently applied this general rule," *AMTRAK v. Pa. PUC*, 288 F.3d 519, 525 (3d Cir. 2002), though its decisions have employed slight variations on the basic requirements embodied in the Restatement. *Compare id.*, *with Henglein v. Colt Indus. Operating Corp.*, 260 F.3d 201, 209 (3d Cir. 2001), *and Seborowski v. Pittsburgh Press Co.*, 188 F.3d 163, 169 (3d Cir. 1999).

In order to apply issue preclusion, a Court must find that: "'(1) the identical issue was previously adjudicated; (2) the issue was actually litigated; (3) the previous determination was necessary to the decision; and (4) the party being precluded from relitigating the issue was fully represented in the prior action.'" *Henglein*, 260 F.3d at 209 (citations omitted); see also *Hawksbill Sea Turtle v. Federal Emergency Management*

*Agency*, 37 V.I. 526, 126 F.3d 461, 475 (1997). "Complete identity of parties in the two suits is not required for the application of issue preclusion." *Burlington N. R.R. v. Hyundai Merch. Marine Co.*, 63 F.3d 1227, 1232 (3d Cir. 1995) In *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326, 99 S. Ct. 645, 649, 58 L. Ed. 2d 552 (1979), the Supreme Court "concluded that 'a litigant who was not a party to a prior judgment may nevertheless use that judgment 'offensively' to prevent a defendant from relitigating issues resolved in the earlier proceeding,' *id*. at 326, 99 S. Ct. at 649, subject to an overriding fairness determination by the trial judge." *Burlington*, 63 F.3d at 1232. The Third Circuit has also considered whether the party being precluded "had a full and fair opportunity to litigate the issue in question in the prior action," *Seborowski*, 188 F.3d at 169, and whether the issue was determined by a final and valid judgment, *AMTRAK*, 288 F.3d at 525.

Ordinarily, a party must raise issue preclusion affirmatively. *Arizona v. California*, 530 U.S. 392, 412-13, 120 S. Ct. 2304, 147 L. Ed. 2d 374 (2000). That is not the only circumstance where issue preclusion may be raised. Indeed, where, as here, "a court is on notice that it has previously decided the issue presented, the court may dismiss the action

*sua sponte*, even though the defense has not been raised."

*Ciarrocchi v. Kennedy Mem'l Hosp.*, 378 F. App'x 239, 241 (3d Cir. 2010) (citations omitted) (internal quotation marks omitted).[3]

Accordingly, the Court will now consider whether the factors required for issue preclusion are met.

The first factor the Court must consider is whether the previously adjudicated issue was identical. The issue adjudicated in *Great Bay* was whether a plain, adequate, and complete remedy exists in the Virgin Islands courts for constitutional challenges to the timeshare fee. That is precisely the same issue presented by the Government's jurisdictional challenge in this case. Thus, this factor is present.

---

[3] It is worth noting that the record suggests that the parties in this case were aware of the jurisdictional issue in *Great Bay* and arguably contemplated being bound by it. On August 2, 2018, the Magistrate Judge ordered the parties to submit their positions on consolidation of this case with *Great Bay* given the overlap of factual and legal issues. Order, August 2, 2018, ECF No. 71. In response, the Government acknowledged that "[a]s to fact discovery on the issues of the 'efficacy and timeliness of the Superior Court of the Virgin Islands' and the 'Tax Injunction Act' … extensive discovery and briefing on those issues have been provided, filed and exchanged in *Great Bay*. … [A]dditional discovery on those issues may be duplicative." *Id*. at 1. Moreover, the Government and the Trust indicated a desire to await the outcome of the jurisdictional inquiry in *Great Bay* before proceeding with this action. *See* Defs.' Mot. to Stay, ECF No. 56; Pls.' Resp. to Defs.' Mot. to Stay, ECF No. 59. Presumably the parties held that view because they wished to be guided in this case by the jurisdictional determination in *Great Bay*.

The second factor the Court must consider is whether the issue was actually litigated. The decision in *Great Bay* occurred after initial briefing, a hearing, and two additional rounds of briefing specifically addressing the issue of whether a plain, adequate, and complete remedy exists in the Virgin Islands courts for constitutional challenges to the timeshare fee. Significantly, on March 20, 2018, the parties were granted additional discovery on the jurisdictional issues. Minute Order, March 20, 2018, ECF No. 78. Thus, the issue was actually litigated. *See, e.g.*, *ITT Corp. v. Intelnet Intern.*, 366 F.3d 205, 211 (3d Cir. 2004).

The third factor that the Court must consider is whether the previous determination was necessary to the decision. In order to assess whether the Court could assert jurisdiction in *Great Bay*, it was necessary for this Court to determine whether a plain, adequate, and complete remedy exists in the Virgin Islands courts for constitutional challenges to the timeshare fee. Thus, the previous determination was necessary to the decision.

Finally, the Court must determine whether the party being precluded from relitigating the issue was fully represented in the prior action. Here, the Government was represented by counsel from the Virgin Islands Department of Justice in *Great*

*Bay*. Thus, the party being precluded from relitigating the issue was fully represented in the prior action.

Consequently, the factors required for issue preclusion are met in this case.[4]

Accordingly, the Court finds that the Government is collaterally estopped from arguing the jurisdictional issue in this case. Thus, the Court will exercise jurisdiction.

**B. Commerce Clause Claim**

The Government asserts that the Trust did not adequately plead that the timeshare fee violates the Commerce Clause.

The Commerce Clause provides: "[t]he Congress shall have power … to regulate commerce … among the several states…." U.S. Const., art. I, § 8, cl. 3. In addition to the power to regulate commerce, the Commerce Clause has been interpreted by the Supreme Court to restrict states' ability to discriminate or unduly burden interstate commerce even in the absence of specific federal legislation on the issue. *H.P. Hood & Sons, Inc. v. Du Mond*, 336 U.S. 525 (1949). This is known as the dormant Commerce Clause. The dormant Commerce Clause prevents

---

[4] Although an issue is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the Second Restatement of Judgments states that relitigation of the issue in a subsequent action between the parties is not precluded in certain circumstances. Restatement (Second) of Judgments § 28 (1982). None of those circumstances are present here.

states from engaging in protectionism or economic isolation to favor in-state over out-of-state economic interests. *Granholm v. Heald*, 544 U.S. 460 (2005).

In *United States v. Lopez*, 514 U.S. 549, 558-59, 131 L. Ed. 2d 626, 115 S. Ct. 1624 (1995), the Supreme Court identified three broad categories of activity that Congress may regulate pursuant to the Commerce Clause: (1) the channels of interstate commerce, (2) the instrumentalities of interstate commerce, or persons or things in interstate commerce, and (3) activities that substantially affect interstate commerce. "The definition of 'commerce' is the same when relied on to strike down or restrict state legislation as when relied on to support some exertion of federal control or regulation." *Camps Newfound/Owatonna, Inc. v. Town of Harrison*, 520 U.S. 564, 137 L. Ed. 2d 852, 117 S. Ct. 1590 (1997)(citing *Hughes v. Oklahoma*, 441 U.S. 322, 60 L. Ed. 2d 250, 99 S. Ct. 1727 (1979)). Thus, the "dormant" or "negative" Commerce Clause prevents states from establishing legislation that falls into one or more of the three categories enumerated in *Lopez*.

As the United States Supreme Court has held several times, "in all but the narrowest circumstances, state laws violate the Commerce Clause if they mandate 'differential treatment of in-state and out-of-state economic interests that benefits the

former and burdens the later.'" *Granholm v. Heald*, 161 L. Ed. 2d 796, 125 S. Ct. 1885, 2005 WL 1130571 (2005)(quoting *Oregon Waste Systems. Inc. v. Department of Environmental Quality of Ore.*, 511 U.S. 93, 128 L. Ed. 2d 13, 114 S. Ct. 1345 (1994)).

Consequently, to state its claim under the Commerce Clause the Trust must allege (1) that State action affects an economic interest, and (2) that that State action favors in-state interests over out-of-state interests.

The Trust alleges that the timeshare fee assesses a $25 fee for each day the timeshare unit is occupied. Second Amended Complaint, ECF No. 27, at ¶13. The Trust uses its timeshare unit as residential housing for vacation and for the purposes of recreation. *Id*. at ¶2. Additionally, the Trust alleges that the timeshare fee is applicable to the occupancy of any timeshare unit made available for short-term rental. *Id*. at ¶14. The Trust alleges that the timeshare fee places it at a competitive disadvantage compared to owners of other residential property in the rental market. *Id*. at ¶36.

The purchase, sale, or rental of residential housing substantially affects interstate commerce. *See United States v. Gaydos*, 108 F.3d 505, 507 (3d Cir. 1997) (noting that the Supreme Court has "opined that the local rental of an apartment unit is an element of a much broader commercial market in rental

properties to which congressional power to regulate extends"). Taking the Trust's allegations as true and drawing all reasonable inferences in its favor, as the Court must, the Trust has sufficiently alleged that the timeshare fee is a State action affecting an economic interest.

The Trust also alleges that neither the timeshare fee, nor any similar fee based on property use by the owner, is imposed on any other class of real property owners in the Virgin Islands. Second Amended Complaint, ECF No. 27, at ¶15. The Trust alleges that the timeshare fee is imposed in addition to the hotel occupancy tax of 12.5% applicable to the occupancy of any timeshare unit made available for short-term rental. *Id.* at ¶14. Additionally, unlike other classes of real property owners, the Trust alleges over 99% of timeshare owners are non-residents of the Virgin Islands. *Id.* at ¶18. The Trust alleges that the timeshare fee places it at a competitive disadvantage compared to owners of other residential property in the rental market. *Id.* at ¶36.

"Statutes may also violate the dormant Commerce Clause if they are motivated by a discriminatory purpose or if they have a discriminatory effect." *Old Coach Dev. Corp. v. Tanzman*, 881 F.2d 1227, 1231 (3d Cir. 1989). Even facially neutral laws enacted without discriminatory motive and in furtherance of

legitimate local objectives may be discriminatory in effect (and, thus, engender strict scrutiny under the jurisprudence of the dormant commerce clause). *See, e.g., Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 352–53, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977). Taking the Trust's allegations as true and drawing all reasonable inferences in its favor, as the Court must, the Trust has met its burden to survive a Fed. R. Civ. P. 12(b)(6) challenge.

While a different outcome may be warranted at the summary judgment stage, the Court finds that for 12(b)(6) purposes the Trust has adequately pled a commerce clause violation.

## C. Equal Protection Claim

The Government asserts that the Trust did not adequately plead that the timeshare fee violates the Equal Protection Clause.

The Equal Protection Clause provides that no state shall "deny to any person . . . the equal protection of its laws." U.S. Const. Amend. XIV, § 1.

To state a claim under the Equal Protection Clause, a plaintiff must allege that (1) it is a member of a protected class, (2) that the State treated it differently from similarly situated individuals, and (3) that this disparate treatment was based on his membership in the protected class. *See Kasper v.*

*Cnty. Of Bucks*, 514 F. App'x 210, 214 (3d Cir. 2013) (citing

*Andrews v. City of Philadelphia*, 895 F.2d 1469, 1478 (3d Cir.

1990).

The Supreme Court has held rational basis to be the

appropriate standard of review for equal protection claims

related to the imposition of property taxes. *See Allegheny*

*Pittsburgh Coal Co. v. County Comm'n of West Va.*, 488 U.S. 336

("[a] State may divide different kinds of property into classes

and assign each class a different tax burden so long as those

divisions are reasonable"). Under rational basis review, a

regulation will defeat an Equal Protection challenge if it is

"reasonable, not arbitrary and bears a rational relationship to

a (permissible) state objective." *Congregation Kol Ami v.*

*Abington Township*, 338, 344 (3d Cir. 2004).

In order to integrate the interests of rational basis

review and the liberal pleading standard of 12(b)(6), the Court

of Appeals for the Third Circuit has noted that a Court should

"accept as true all of the complaint's allegations, including

all reasonable inferences that follow, and assess whether they

are sufficient to overcome the presumption of rationality that

applies to the ordinance." *Rucci v. Cranberry, Tp., Pa.*, 130

Fed. Appx. 572, 575 (3d Cir. 2005)(citations omitted).

The Trust alleges that the imposition of the timeshare fee has no rational basis and merely serves to discriminate against timeshare owners because the majority are non-residents without the ability to vote. Second Amended Complaint, ECF No. 27, at ¶¶31, 42.

"The Equal Protection Clause does not demand for purposes of rational-basis review that a legislature or governing decisionmaker actually articulate at any time the purpose or rationale supporting its classification. Nevertheless, [a court's] review does require that a purpose may conceivably or 'may reasonably have been the purpose and policy' of the relevant governmental decisionmaker." *Nordlinger v. Hahn*, 505 U.S. 1, 15, 112 S. Ct. 2326, 2334 (1992). At this stage, the Trust's allegations must be taken as true. Applying that standard, relief under Fed. R. Civ. P. 12(b)(6) is not appropriate.

While a different outcome may be warranted at the summary judgment stage, as was the case in *Frank v. Gov't of the V.I.*, No. 2009-66, 2010 U.S. Dist. LEXIS 32341, at *40 (D.V.I. Mar. 31, 2010), *aff'd*, 563 F. App'x 169 (3d Cir. 2014), the Court finds that for 12(b)(6) purposes the Trust has adequately pled an equal protection violation.

## D. Privileges and Immunities Claim

The Government asserts that the Trust did not adequately plead that the timeshare fee violates the Privileges and Immunities Clause of the United States Constitution.

The United States Constitution provides that: "The Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States." U.S. CONST. art. IV, § 2. The Privileges and Immunities Clause does not prohibit disparate treatment of residents and non-residents in all situations, but "does bar discrimination against citizens of other States where there is no substantial reason for the discrimination beyond the mere fact that they are citizens of other States." *Toomer v. Witsell*, 334 U.S. 385, 396 (1948). "Without such discrimination … the Privileges and Immunities Clause is not implicated." *Everett v. Schneider*, 989 F. Supp. 720, 722 (D.V.I. 1997).

Consequently, to state its claim under the Privileges and Immunities Clause the Trust must allege that (1) it is a citizen of another State, (2) that the State treated it differently due to its citizenship, and (3) that there was no substantial reason for this disparate treatment beyond the mere fact that it is a citizen of another State. *See Toomer v. Witsell*, 334 U.S. 385, 396 (1948).

Taking the Trust's allegations as true and drawing all reasonable inferences in its favor, as the Court must, relief pursuant to Fed. R. Civ. P. 12(b)(6) is not appropriate.

While a different outcome may be warranted at the summary judgment stage, as was the case in *Frank v. Gov't of the V.I.*, No. 2009-66, 2010 U.S. Dist. LEXIS 32341, at *40 (D.V.I. Mar. 31, 2010), *aff'd*, 563 F. App'x 169 (3d Cir. 2014), the Court finds that for 12(b)(6) purposes the Trust has adequately pled a violation of the Privileges and Immunities clause.

The premises considered, it is hereby

**ORDERED** that the motion to dismiss the Second Amended Complaint (ECF No. 31) is **DENIED**; it is further

**ORDERED** that the motion for leave to file excess pages (ECF No. 51) is **GRANTED**; and it is further

**ORDERED** that the motion to stay proceedings (ECF No. 56) is **MOOT**.


S\_____
              **Curtis V. Gómez**
              **District Judge**