DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN

THE KIMBERLY STONECIPHER-FISHER REVOCABLE )
LIVING TRUST; KIMBERLY STONECIPHER-FISHER, )
TRUSTEE; and AMERICAN RESORT DEVELOPMENT )
ASSOCIATION — RESORT OWNERS' COALITION, )
                                          )        Civil No. 2017-32
            Plaintiffs,                   )
                                          )
            v.                            )
                                          )
GOVERNMENT OF THE VIRGIN ISLANDS,         )
                                          )
            Defendant.                    )
_____)
                                          )
GREAT BAY CONDOMINIUM OWNERS ASSOCIATION, )
INC.; TIMOTHY O'BRIEN; and KEITH CHEATHAM, )
                                          )        Civil No. 2017-33
            Plaintiffs,                   )
                                          )
            v.                            )
                                          )
GOVERNMENT OF THE VIRGIN ISLANDS; and     )
JOEL A. LEE, DIRECTOR OF THE BUREAU OF    )
INTERNAL REVENUE, in his official         )
capacity,                                 )
                                          )
            Defendants.                   )
_____)

ATTORNEYS:

**Kevin Johnson**
Baker Hostetler LLP
Philadelphia, PA 19104
**Chad Messier**
**Lisa Michelle Komives**
Dudley Newman Feuerzeig, LLP
St. Thomas, VI
        *For The Kimberly Stonecipher-Fisher Revocable Living Trust;*
        *Kimberly Stonecipher-Fisher, Trustee; and American Resort*
        *Development Association – Resort Owners' Coalition,*

*The Kimberly Stonecipher-Fisher Revocable Trust, et al., v. Government of the Virgin Islands*
Civil No. 17-32
*Great Bay Condominium Owners Association, Inc., et al. v. Government of the Virgin Islands, et. al.*
Civil No. 17-33
Memorandum Opinion
Page 2

**Mark Wilczynski, Esq.**
**Lauren Nicole Wright, Esq.**
Law Office of Wilczynski, P.C.
St. Thomas, VI
> *For Great Bay Condominium Owners Association, Inc.; Timothy O'Brien; and Keith Cheatham,*

**Denise N. George, Attorney General**
**Ariel Marie Smith-Francois, AAG**
**Carol Thomas-Jacobs, AAG**
Virgin Islands Department of Justice
St. Thomas, V.I.
> *For the Government of the Virgin Islands and Joel Lee, Acting Director of the Bureau of Internal Revenue, in his official capacity.*

<u>**MEMORANDUM OPINION**</u>

**GÓMEZ, J.**

Before the Court are the claims of the Kimberly Stonecipher-Fisher Revocable Living Trust; Kimberly Stonecipher-Fisher, Trustee; American Resort Development Association – Resort Owners' Coalition; Great Bay Condominium Owners Association, Inc.; Timothy O'Brien; and Keith Cheatham. The parties to this action previously agreed to try this matter on the papers. The Court, having considered the parties' various pleadings, exhibits, affidavits, and the arguments of counsel, now enters Judgment pursuant to Rule 52(a) of the Federal Rules of Civil Procedure.

*The Kimberly Stonecipher-Fisher Revocable Trust, et al., v. Government of the Virgin Islands*
Civil No. 17-32
*Great Bay Condominium Owners Association, Inc., et al. v. Government of the Virgin Islands, et. al.*
Civil No. 17-33
Memorandum Opinion
Page 3

## I.   <u>FACTUAL AND PROCEDURAL HISTORY</u>

The Kimberly Stonecipher-Fisher Revocable Living Trust (the "Trust") is a trust created under Missouri law. Kimberly Stonecipher-Fisher (the "Trustee") is the trustee of the Trust and is a resident of Missouri. Marriott Frenchman's Cove ("Frenchman's Cove") is a resort located in St. Thomas, U.S. Virgin Islands. The Trust owns a timeshare interest in the Frenchman's Cove.

The American Resort Development Association (the "Association") is a not-for-profit corporation that serves as an industry group for the timeshare industry. The Association is based in Washington D.C. The American Resort Development Association-Resort Owners' Coalition (the "Coalition") is a not-for-profit corporation also based in Washington D.C. The Coalition is an association that represents the interests of timeshare owners, including owners of timeshares in the U.S. Virgin Islands. The Trust is a member of the Coalition.

The Ritz-Carlton Club is a resort located in St. Thomas, U.S. Virgin Islands. Great Bay Condominium Owners Association, Inc. (the "Great Bay Association") is an association of owners of fractional interests in the Ritz-Carlton Club. Timothy

*The Kimberly Stonecipher-Fisher Revocable Trust, et al., v. Government of the Virgin Islands*
Civil No. 17-32
*Great Bay Condominium Owners Association, Inc., et al. v. Government of the Virgin Islands, et. al.*
Civil No. 17-33
Memorandum Opinion
Page 4

O'Brien ("O'Brien") and Keith Cheatham ("Cheatham") own fractional interests in the Ritz-Carlton Club.

Prior to March 8, 2008, all real property in the Virgin Islands was taxed at a uniform rate. On March 8, 2008, the Virgin Legislature enacted a new tax schedule. That tax schedule (the "Disparate Tax Schedule") currently provides for different mill rates[1] for different types of real property: .004946 for unimproved non-commercial real property; .003770 for residential real property; .007110 for commercial real property; and .014070 for timeshare real property. 33 V.I.C. § 2301(b).

On March 22, 2017, the then-Governor of the U.S. Virgin Islands, Kenneth Mapp, signed the Virgin Islands Revenue Enhancement and Economic Recovery Act of 2017 ("VIREERA" or the "Act") into law. VIREERA imposes a $25 per day occupancy fee (the "timeshare fee") on the owners of timeshare units in the Virgin Islands. 33 V.I.C. § 54(b)(3)(A). The timeshare fee took effect on May 1, 2017.

A timeshare plan is a form of property ownership that allows owners of interests in the plan to share rights to use

---

[1] "The mill rate is the amount of tax payable per dollar of the assessed value of a property." *Mill Rate*, Investopedia, https://www.investopedia.com/terms/m/millrate.asp.

*The Kimberly Stonecipher-Fisher Revocable Trust, et al., v. Government of the Virgin Islands*
Civil No. 17-32
*Great Bay Condominium Owners Association, Inc., et al. v. Government of the Virgin Islands, et. al.*
Civil No. 17-33
Memorandum Opinion
Page 5

the timeshare plan property. Typically each owner is allotted their own period of time for use. VIREERA outlines the obligations of various individuals and entities involved in timeshare matters in the Virgin Islands. For example, the Act requires the timeshare plan manager to collect the timeshare fee, file tax returns, and pay the timeshare fee to the Virgin Islands Bureau of Internal Revenue. 33 V.I.C. § 54(b)(3)(B). The timeshare association is responsible for any and all assessments and liens. *Id.*

Revenues from the timeshare fee are to be allocated in the following manner: (1) 15% to the Virgin Islands Tourism Advertising Revolving Fund, and (2) 85% to the General Fund.[2] Additionally, the Virgin Islands Bureau of Economic Research is required to "conduct a study on the impact of timeshare activities and components in the Virgin Islands within two years of implementation" of the timeshare fee. 33 V.I.C. § 54(b)(3)(F).

---

[2] From 2022 through 2023, the portion of the revenues from the timeshare fee allocated to the General Fund decreases to 40%, while 45% of the revenues are allocated to the VIESA Contingency Reserve Account. From 2024 forward, the portion of the revenues from the timeshare fee allocated to the General Fund returns to 85%.

*The Kimberly Stonecipher-Fisher Revocable Trust, et al., v. Government of the Virgin Islands*
Civil No. 17-32
*Great Bay Condominium Owners Association, Inc., et al. v. Government of the Virgin Islands, et. al.*
Civil No. 17-33
Memorandum Opinion
Page 6

On May 1, 2017, the Coalition filed a two-count complaint (the "ARDA-ROC Complaint") in Civil Case No. 17-32 (the "ARDA-ROC case") naming the Government of the Virgin Islands as a defendant and seeking: (1) a declaration that the timeshare fee is unconstitutional, and (2) an injunction barring collection of the timeshare fee. Count One alleges that the timeshare fee violates the Commerce Clause. Count Two alleges that the timeshare fee violates the Equal Protection Clause and the Privileges and Immunities Clause. On January 5, 2018, the Trust, the Trustee, and the Coalition (collectively "ARDA-ROC") filed an amended complaint in this matter adding the Trust and the Trustee as plaintiffs.

On May 3, 2017, the Great Bay Association, O'Brien, and Cheatham (collectively "Great Bay") filed a seven-count complaint (the "Great Bay Complaint") in Civil Case No. 17-33 ("the Great Bay case") naming the Government of the Virgin Islands and the Director of the Bureau of Internal Revenue, in his official capacity (collectively, the "Virgin Islands" or "the Government"), as defendants. Count One alleges that the timeshare fee and Disparate Tax Schedule violate the Equal Protection Clause. Count Two alleges that the timeshare fee and

*The Kimberly Stonecipher-Fisher Revocable Trust, et al., v. Government of the Virgin Islands*
Civil No. 17-32
*Great Bay Condominium Owners Association, Inc., et al. v. Government of the Virgin Islands, et. al.*
Civil No. 17-33
Memorandum Opinion
Page 7

Disparate Tax Schedule violate the Privileges and Immunities Clause. Count Three alleges that the timeshare fee and Disparate Tax Schedule violate the Commerce Clause. Count Four alleges that VIREERA's timeshare fee collection provisions violate the due process rights of the Great Bay Association. Count Five alleges that the timeshare fee will reduce the value of timeshare property and, as such, constitutes a Fifth Amendment taking. Count Six alleges a taxpayer claim under 5 V.I.C. § 80, seeking to enjoin allegedly illegal acts.[3] Count Seven seeks a declaration as to the rights of the parties.

On June 22, 2017, the Virgin Islands filed a motion to dismiss the Great Bay Complaint for lack of subject-matter jurisdiction. The Court granted the Government's motion to dismiss in part, dismissing Count One, Count Two, Count Three, and Count Six of the Great Bay complaint only insofar as those counts challenged the Disparate Tax Schedule. The Court also dismissed Count Five of the Great Bay Complaint as unripe.

On November 21, 2018, ARDA-ROC moved to consolidate the ARDA-ROC case with the Great Bay case. The Virgin Islands filed a notice indicating that it did not object to the consolidation

---

[3] Count Six does not identify any additional illegality other than the alleged illegality raised in the other counts.

*The Kimberly Stonecipher-Fisher Revocable Trust, et al., v. Government of the Virgin Islands*
Civil No. 17-32
*Great Bay Condominium Owners Association, Inc., et al. v. Government of the Virgin Islands, et. al.*
Civil No. 17-33
Memorandum Opinion
Page 8

of the two cases.[4] On December 13, 2018, Great Bay filed a notice indicating that they did not object to such consolidation. Thereafter, on January 8, 2019, the Magistrate Judge consolidated the two cases.

On February 11, 2019, Great Bay filed an amended complaint adding an eighth count against the Virgin Islands.[5] Count Eight seeks a declaration that the Virgin Islands has failed to comply with the statutorily mandated appropriations and deposit requirements for the revenue generated by the timeshare fee. Count Eight also seeks an injunction requiring the Government to comply with various Virgin Islands statutory obligations.

On May 7, 2019, the parties appeared before the Court for a telephone conference. At that conference, the parties agreed to submit the remaining issues for a decision on the papers. The parties have since submitted a stipulated record for the Court's consideration.

---

[4] On August 2, 2018, the Court entered an order noting that it was considering consolidating the two cases due to their great overlap of factual and legal issues. That order required the parties to submit their position regarding consolidation on the docket. On August 6, 2018, the Virgin Islands filed a notice indicating that it did not object to such consolidation.

[5] On January 14, 2019, Great Bay moved to amend their complaint. At a February 7, 2019, status conference before the Magistrate Judge, the Virgin Islands indicated that it did not object to the proposed amendment of the Great Bay Complaint. Thereafter, the Magistrate Judge granted Great Bay's motion to amend their complaint.

*The Kimberly Stonecipher-Fisher Revocable Trust, et al., v. Government of the Virgin Islands*
Civil No. 17-32
*Great Bay Condominium Owners Association, Inc., et al. v. Government of the Virgin Islands, et. al.*
Civil No. 17-33
Memorandum Opinion
Page 9

## II.  <u>DISCUSSION</u>

### A. Commerce Clause

The Commerce Clause provides: "[t]he Congress shall have power . . . to regulate commerce . . . among the several states . . .." U.S. Const., art. I, § 8, cl. 3. In addition to the power to regulate commerce, the Commerce Clause has been interpreted by the Supreme Court to restrict states' ability to discriminate against or unduly burden interstate commerce even in the absence of specific federal legislation on the issue. *H.P. Hood & Sons, Inc. v. Du Mond*, 336 U.S. 525 (1949). This is known as the dormant Commerce Clause. The dormant Commerce Clause prevents states from engaging in protectionism or economic isolation to favor in-state over out-of-state economic interests. *Granholm v. Heald*, 544 U.S. 460 (2005).

A state tax will withstand scrutiny under the Commerce Clause if "the tax is applied to an activity with a substantial nexus with the taxing State, is fairly apportioned, does not discriminate against interstate commerce, and is fairly related to the services provided by the State." *Complete Auto Transit, Inc. v. Brady*, 430 U.S. 274, 279 (1977).

*The Kimberly Stonecipher-Fisher Revocable Trust, et al., v. Government of the Virgin Islands*
Civil No. 17-32
*Great Bay Condominium Owners Association, Inc., et al. v. Government of the Virgin Islands, et. al.*
Civil No. 17-33
Memorandum Opinion
Page 10

The substantial "nexus requirement is 'closely related' to the due process requirement that there be 'some definite link, some minimum connection, between a state and the person, property or transaction it seeks to tax.'" *South Dakota v. Wayfair, Inc.*, 138 S. Ct. 2080, 2093 (2018) (citations omitted).

"[T]he central purpose behind the apportionment requirement is to ensure that each State taxes only its fair share of an interstate transaction." *Goldberg v. Sweet*, 488 U.S. 252, 260-61 (1989). Courts "determine whether a tax is fairly apportioned by examining whether it is internally and externally consistent." *Id.* at 261. "To be internally consistent, a tax must be structured so that if every State were to impose an identical tax, no multiple taxation would result." *Id.* "Thus, the internal consistency test focuses on the text of the challenged statute and hypothesizes a situation where other States have passed an identical statute." *Id.* "The external consistency test asks whether the State has taxed only that portion of the revenues from the interstate activity which reasonably reflects the in-state component of the activity being taxed." *Id.*

With respect to the third prong of the *Complete Auto* test, "'discrimination' simply means differential treatment of in-

*The Kimberly Stonecipher-Fisher Revocable Trust, et al., v. Government of the Virgin Islands*
Civil No. 17-32
*Great Bay Condominium Owners Association, Inc., et al. v. Government of the Virgin Islands, et. al.*
Civil No. 17-33
Memorandum Opinion
Page 11

state and out-of-state economic interests that benefits the former and burdens the latter." *Or. Waste Sys. v. Dep't of Envtl.* Quality, 511 U.S. 93, 99 (1994).

"The relevant inquiry under the fourth prong of the *Complete Auto Transit* test . . . is closely connected to the first prong of the *Complete Auto Transit* test." *Commonwealth Edison Co. v. Montana*, 453 U.S. 609, 625-26 (1981). "Beyond [the] threshold requirement [of the first prong], the fourth prong of the *Complete Auto Transit* test imposes the additional limitation that the *measure* of the tax must be reasonably related to the extent of the contact, since it is the activities or presence of the taxpayer in the State that may properly be made to bear a 'just share of state tax burden.'" *Id.* at 626 (citations omitted). Indeed, "interstate commerce may be required to contribute to the cost of providing *all* governmental services, including those services from which it arguably receives no direct 'benefit.'" *Id.* at 627 n.16; *see also Okla. Tax Comm'n v. Jefferson Lines*, 514 U.S. 175, 199 (1995)(noting that "[t]he fair relation prong of *Complete Auto* requires no detailed accounting of the services provided to the taxpayer on account of the activity being taxed, nor, indeed, is a State

*The Kimberly Stonecipher-Fisher Revocable Trust, et al., v. Government of the Virgin Islands*
Civil No. 17-32
*Great Bay Condominium Owners Association, Inc., et al. v. Government of the Virgin Islands, et. al.*
Civil No. 17-33
Memorandum Opinion
Page 12

limited to offsetting the public costs created by the taxed activity"). Moreover, "[i]f the event is taxable, the proceeds from the tax may ordinarily be used for purposes unrelated to the taxable event." *Jefferson Lines*, 514 U.S. at 199.

## B. Equal Protection Clause

The Equal Protection Clause provides that no state shall "deny to any person . . . the equal protection of its laws." U.S. Const. Amend. XIV, § 1.

"The Equal protection Clause applies only to taxation which in fact bears unequally on person or property of the same class." *Allegheny Pittsburgh Coal Co. v. Cnty. Comm'n of Webster Cnty.*, 488 U.S. 336, 343 (1989) (quoting *Charleston Fed. Savs. & Loan Ass'n v. Alderson*, 324 U.S. 182, 190 (1945) (collecting cases)) (internal quotation marks omitted). The Supreme Court has held rational basis to be the appropriate standard of review for equal protection claims related to the imposition of property taxes. *See Allegheny Pittsburgh Coal*, 488 U.S. at 344 ("[a] State may divide different kinds of property into classes and assign each class a different tax burden so long as those divisions are reasonable"). So long as "the selection or classification is neither capricious nor arbitrary, and rests

*The Kimberly Stonecipher-Fisher Revocable Trust, et al., v. Government of the Virgin Islands*
Civil No. 17-32
*Great Bay Condominium Owners Association, Inc., et al. v. Government of the Virgin Islands, et. al.*
Civil No. 17-33
Memorandum Opinion
Page 13

upon some reasonable consideration of difference or policy, there is no denial of the equal protection of the law." *Id.* (quoting *Brown-Forman Co. v. Kentucky*, 217 U.S. 563, 573 (1910); *see also Congregation Kol Ami v. Abington Township*, 338, 344 (3d Cir. 2004) (explaining that, under rational basis review, a regulation will defeat an Equal Protection challenge if it is "reasonable, not arbitrary and bears a rational relationship to a (permissible) state objective").

"The Equal Protection Clause does not demand for purposes of rational-basis review that a legislature or governing decisionmaker actually articulate at any time the purpose or rationale supporting its classification." *Nordlinger v. Hahn*, 505 U.S. 1, 15 (1992). "Nevertheless, [a court's] review does require that a purpose may conceivably or 'may reasonably have been the purpose and policy' of the relevant governmental decisionmaker." *Id.*

## C. Privileges & Immunities Clause

The United States Constitution provides that: "The Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States." U.S. Const. art. IV, § 2.

*The Kimberly Stonecipher-Fisher Revocable Trust, et al., v. Government of the Virgin Islands*
Civil No. 17-32
*Great Bay Condominium Owners Association, Inc., et al. v. Government of the Virgin Islands, et. al.*
Civil No. 17-33
Memorandum Opinion
Page 14

The Privileges and Immunities Clause does not prohibit disparate treatment of residents and non-residents in all situations, but "does bar discrimination against citizens of other States where there is no substantial reason for the discrimination beyond the mere fact that they are citizens of other States." *Toomer v. Witsell*, 334 U.S. 385, 396 (1948); *see also Lunding v. N.Y. Tax Appeals Tribunal*, 522 U.S. 287, 298 (1998) (citations omitted) (explaining that "when confronted with a challenge under the Privileges and Immunities Clause to a law distinguishing between residents and nonresidents, a State may defend its position by demonstrating that '(i) there is a substantial reason for the difference in treatment; and (ii) the discrimination practiced against nonresidents bears a substantial relationship to the State's objective.'").

"[A]s a practical matter, the Privileges and Immunities Clause affords no assurance of precise equality in taxation between residents and nonresidents of a particular State." *Lunding*, 522 U.S. at 297. "Some differences may be inherent in any taxing scheme, given that, 'like many other constitutional provisions, the privileges and immunities clause is not an

*The Kimberly Stonecipher-Fisher Revocable Trust, et al., v. Government of the Virgin Islands*
Civil No. 17-32
*Great Bay Condominium Owners Association, Inc., et al. v. Government of the Virgin Islands, et. al.*
Civil No. 17-33
Memorandum Opinion
Page 15

absolute,' and that 'absolute equality is impracticable in taxation.'" *Id.* (citations omitted).

**D. Due Process Clause**

The Due Process Clause of the Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. Amend. XIV, § 1. Due process contains both a procedural and substantive component. *Nicholas v. Pa. State Univ.*, 227 F.3d 133, 139 (3d Cir. 2000).

"To state a claim [] for deprivation of procedural due process rights, a plaintiff must allege that (1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to him did not provide 'due process of law.'" *Hill v. Borough of Kutztown*, 455 F.3d 225, 233-34 (3d Cir. 2006). "To determine what process is due in a particular situation, courts consider three factors: first, the private interest at stake; second, the risk of erroneous deprivation of that interest through the procedures used and the probable value of different procedures; and third, the government's interest." *Mulholland v. Gov't Cty. of Berks*,

*The Kimberly Stonecipher-Fisher Revocable Trust, et al., v. Government of the Virgin Islands*
Civil No. 17-32
*Great Bay Condominium Owners Association, Inc., et al. v. Government of the Virgin Islands, et. al.*
Civil No. 17-33
Memorandum Opinion
Page 16

706 F.3d 227, 238 (3d Cir. 2013). "[P]rocedural due process does not extend to legislative action." *N.Y. Shipping Ass'n v. Waterfront Comm'n of N.Y. Harbor N.Y. Shipping Ass'n*, 835 F.3d 344, 357 (3d Cir. 2016).

In order for a legislative act to survive a substantive due process challenge, "the act must withstand rational basis review." *Am. Express Travel Related Servs. v. Sidamon-Eristoff*, 669 F.3d 359, 366 (3d Cir. 2012). "To do so, the defendant must demonstrate (1) the existence of a legitimate state interest that (2) could be rationally furthered by the statute." *Id.* "The rational basis test, although 'not a toothless one,' requires significant deference to the legislature's decision-making and assumptions." *Id.* (citations omitted). "[T]hose attacking the rationality of the legislative classification have the burden 'to negative every conceivable basis which might support it[.]'" *Id.*

With respect to non-legislative action, a "deprivation that comports with procedural due process may still give rise to a substantive due process claim upon allegations that the government deliberately and arbitrarily abused its power." *Nicholas*, 227 F.3d at 139 (citations omitted) (internal

*The Kimberly Stonecipher-Fisher Revocable Trust, et al., v. Government of the Virgin Islands*
Civil No. 17-32
*Great Bay Condominium Owners Association, Inc., et al. v. Government of the Virgin Islands, et. al.*
Civil No. 17-33
Memorandum Opinion
Page 17

quotation marks omitted). "To prevail on a non-legislative substantive due process claim, 'a plaintiff must establish as a threshold matter that he has a protected property interest to which the Fourteenth Amendment's due process protection applies.'" *Id.* at 139-40 (citations omitted). "[A] property interest that falls within the ambit of substantive due process may not be taken away by the state for reasons that are 'arbitrary, irrational, or tainted by improper motive,' or by means of government conduct so egregious that it 'shocks the conscience.'" *Id.* at 139 (citation omitted).

### III. <u>ANALYSIS</u>

**A. Commerce Clause Claim**

ARDA-ROC and Great Bay each argue that the timeshare fee violates the Commerce Clause because (1) it discriminates against non-residents in both purpose and effect, and (2) it is not fairly related to the services provided by the Virgin Islands. Specifically, with respect to the discriminatory impact of the timeshare fee, ARDA-ROC and Great Bay argue that (1) the Government's express purpose in enacting the timeshare fee was to increase the tax burden on non-residents without increasing the tax burden on residents, and (2) the overwhelming majority

*The Kimberly Stonecipher-Fisher Revocable Trust, et al., v. Government of the Virgin Islands*
Civil No. 17-32
*Great Bay Condominium Owners Association, Inc., et al. v. Government of the Virgin Islands, et. al.*
Civil No. 17-33
Memorandum Opinion
Page 18

of timeshares are owned by non-residents. With respect to the timeshare fee's relation to the Virgin Islands, ARDA-ROC plaintiffs and Great Bay argue that (1) the Government has not conducted any study to determine the impact of timeshare owners on the Virgin Islands's infrastructure, and (2) the revenue from the timeshare fee is allocated to expenditures unrelated to the impact of timeshare owners on the Virgin Islands's infrastructure.

In *Commonwealth Edison Co. v. Montana*, 453 U.S. 609 (1981), the state of Montana imposed a tax on the output of coal mines located within the state. *Commonwealth Edison Co.*, 453 U.S. at 612. The tax was levied at various rates which could equal, at a maximum, 30% of the price, excluding the amount charged to pay production taxes, of the coal. *Id.* at 613. At least 50% of the revenues generated by that tax had to be paid into a permanent trust fund. *Id.* Several Montana coal producers and their out-of-state utility company customers filed a lawsuit against Montana in a state court. The coal producers and utility companies sought a declaration that the tax was invalid under the Commerce Clause. *Id.* The coal producers also sought an injunction against further collection of the tax. *Id.* Montana moved to dismiss the

*The Kimberly Stonecipher-Fisher Revocable Trust, et al., v. Government of the Virgin Islands*
Civil No. 17-32
*Great Bay Condominium Owners Association, Inc., et al. v. Government of the Virgin Islands, et. al.*
Civil No. 17-33
Memorandum Opinion
Page 19

complaint for failure to state a claim upon which relief could be granted. The state court granted Montana's motion and dismissed the matter. The Montana Supreme Court affirmed. The Montana Supreme Court held that the tax was not subject to scrutiny under the Commerce Clause because it was imposed on an activity--the extraction of coal from Montana coal mines--that the Montana Supreme Court characterized as an entirely intrastate activity. *Id.* Alternatively, the Montana Supreme Court held as a matter of law that the tax survived scrutiny under the *Complete Auto Transit* test. Thereafter, the coal and utility companies petitioned for, and were granted, a writ of certiorari from the United States Supreme Court.

The Supreme Court affirmed the holding of the Montana Supreme Court. The Supreme Court found that the tax comported with the requirements of the *Complete Auto Transit* test. *Id.* at 629. As a threshold matter, the Supreme Court addressed the Montana Supreme Court's holding that the tax was not subject to scrutiny under the Commerce Clause. The Supreme Court explained that "State taxes levied on a 'local' activity preceding entry of the goods into interstate commerce may substantially affect interstate commerce, and this effect is the proper focus of

*The Kimberly Stonecipher-Fisher Revocable Trust, et al., v. Government of the Virgin Islands*
Civil No. 17-32
*Great Bay Condominium Owners Association, Inc., et al. v. Government of the Virgin Islands, et. al.*
Civil No. 17-33
Memorandum Opinion
Page 20

Commerce Clause inquiry." *Id.* at 616. As such, the Supreme Court found that it was required to evaluate the Montana tax under the *Complete Auto Transit* test.

Initially, the Supreme Court noted that the parties did not dispute that the tax satisfied the first two prongs of the *Complete Auto Transit* test.

> As the Montana Supreme Court noted, "there can be no argument here that a substantial, in fact, the only nexus of the severance of coal is established in Montana." Nor is there any question here regarding apportionment or potential multiple taxation, for as the state court observed, "the severance can occur in no other state" and "no other state can tax the severance."

*Id.* at 617.

With respect to the third prong of the *Complete Auto Transit* test, the coal and utility companies argued that "the Montana tax '[discriminates] against interstate commerce' because 90% of Montana coal is shipped to other States under contracts that shift the tax burden primarily to non-Montana utility companies and thus to citizens of other States." *Id.* at 618. The Supreme Court rejected this argument, noting that "there is no real discrimination in this case; the tax burden is borne according to the amount of coal consumed and not according to any distinction between in-state and out-of-state consumers."

*The Kimberly Stonecipher-Fisher Revocable Trust, et al., v. Government of the Virgin Islands*
Civil No. 17-32
*Great Bay Condominium Owners Association, Inc., et al. v. Government of the Virgin Islands, et. al.*
Civil No. 17-33
Memorandum Opinion
Page 21

*Id.* at 619. As such, the Supreme Court explained that the coal

and utility companies'

> discrimination theory ultimately collapses into their
> claim that the Montana tax is invalid under the fourth
> prong of the *Complete Auto Transit* test: that the tax is
> not "fairly related to the services provided by the
> State." Because [the coal and utility companies] concede
> that Montana may impose some severance tax on coal mined
> in the State, the only remaining foundation for their
> discrimination theory is a claim that the tax burden
> borne by the out-of-state consumers of Montana coal is
> excessive. This is, of course, merely a variant of [the
> coal and utility companies'] assertion that the Montana
> tax does not satisfy the "fairly related" prong of the
> *Complete Auto Transit* test.

*Id.* at 620 (citations omitted).

Turning to the fourth prong of the *Complete Auto Transit*

test, the Supreme Court explained that the coal and utility

companies' only complaint was that the amount of the tax was

excessive in relation to the value of the services provided by

Montana to the coal mining industry. *Id.* at 621. The coal and

utility companies' argument (1) assumed that the tax was

"intended to reimburse the State for the cost of specific

services furnished to the coal mining industry," *id.*, or (2)

assumed that "a State's power to tax an activity connected to

interstate commerce cannot exceed the value of the services

*The Kimberly Stonecipher-Fisher Revocable Trust, et al., v. Government of the Virgin Islands*
Civil No. 17-32
*Great Bay Condominium Owners Association, Inc., et al. v. Government of the Virgin Islands, et. al.*
Civil No. 17-33
Memorandum Opinion
Page 22

specifically provided to the activity," *id.* Neither assumption was correct.

First, the Supreme Court noted that it had no reason to question the Montana Supreme Court's conclusion that the tax was a general revenue tax. As such, the Supreme Court declined to apply its precedents regarding challenges to user fees or taxes that are "designed and defended as a specific charge imposed by the State for the use of state-owned or state-provided transportation or other facilities and services."[6] *Id.* Further, the Supreme Court held that the tax satisfied the "fairly-related" prong of the *Complete Auto Transit* test:

> Because it is measured as a percentage of the value of the coal taken, the Montana tax is in "proper proportion" to appellants' activities within the State and, therefore, to their "consequent enjoyment of the opportunities and protections which the State has afforded" in connection with those activities. When a tax is assessed in proportion to a taxpayer's activities or presence in a State, the taxpayer is shouldering its fair share of supporting the State's provision of "police and fire protection, the benefit of a trained

---

[6] As the Supreme Court explained, "such charges are purportedly assessed to reimburse the State for costs incurred in providing specific quantifiable services." *Commonwealth Edison*, 453 U.S. at 622 n. 12.

*The Kimberly Stonecipher-Fisher Revocable Trust, et al., v. Government of the Virgin Islands*
Civil No. 17-32
*Great Bay Condominium Owners Association, Inc., et al. v. Government of the Virgin Islands, et. al.*
Civil No. 17-33
Memorandum Opinion
Page 23

work force, and 'the advantages of a civilized society.'"

*Id.* at 626-27 (citation omitted).

In so holding, the Supreme Court rejected the argument that the fourth prong of the *Complete Auto Transit* test "must be construed as requiring a factual inquiry into the relationship between the revenues generated by a tax and costs incurred on account of the taxed activity[] in order to provide a mechanism for judicial disapproval under the Commerce Clause of state taxes that are excessive." *Id.* at 627. As the Supreme Court explained, "[t]he simple fact is that the appropriate level or rate of taxation is essentially a matter for legislative, and not judicial, resolution." *Id.* As such, the Supreme Court declined to "prescribe a test for the validity of state taxes that would require state and federal courts, as a matter of federal constitutional law, to calculate acceptable rates or levels of taxation of activities that are conceded to be legitimate subjects of taxation." *Id.* at 628.

*Commonwealth Edison* is instructive here given the many parallels between the arguments advanced in that case and the arguments raised here against the timeshare fee.

*The Kimberly Stonecipher-Fisher Revocable Trust, et al., v. Government of the Virgin Islands*
Civil No. 17-32
*Great Bay Condominium Owners Association, Inc., et al. v. Government of the Virgin Islands, et. al.*
Civil No. 17-33
Memorandum Opinion
Page 24

ARDA-ROC and Great Bay do not challenge the timeshare fee under the first two prongs of the *Complete Auto Transit* test. Indeed, the timeshare fee is a real property tax that applies to the use of timeshares located in the Virgin Islands. As such, there is a substantial nexus between the use of such timeshares and the Virgin Islands. *See, e.g., Commonwealth Edison*, 453 U.S. at 624 (noting that "a real property tax . . . has never been doubted as a legitimate means of raising revenue by the situs State"). Additionally, the use of a timeshare in the Virgin Islands cannot be taxed by any other state. *See, e.g., Miller Bros. Co. v. Maryland*, 347 U.S. 340, 342 (1954)("No principle is better settled than that the power of a State, even its power of taxation, in respect to property, is limited to such as is within its jurisdiction."). Thus, as in *Commonwealth Edison*--in which the taxed activity also occurred in, and was taxable in, only a single state--the timeshare fee satisfies the "fairly apportioned" prong.

With respect to the third prong, the issue is whether non-residents bear a greater burden than *similarly situated* residents. Here, the timeshare fee draws no distinction between non-residents and residents. Rather it imposes a $25 fee per day

*The Kimberly Stonecipher-Fisher Revocable Trust, et al., v. Government of the Virgin Islands*
Civil No. 17-32
*Great Bay Condominium Owners Association, Inc., et al. v. Government of the Virgin Islands, et. al.*
Civil No. 17-33
Memorandum Opinion
Page 25

of occupancy regardless of the residency of the occupants. As such, the tax burden of the timeshare fee is borne according to the use of a timeshare in the Virgin Islands "not according to any distinction between in-state and out-of-state consumers." *Commonwealth Edison*, 453 U.S. at 619. Thus, the timeshare fee satisfies the third prong of the *Complete Auto Transit* test.

Still, ARDA-ROC and Great Bay argue that the timeshare fee is discriminatory because the Government enacted the timeshare fee in order to generate revenues from external sources--non-residents--without increasing the tax burden on residents. Whether that is the effect is not relevant to the Court's inquiry for Commerce Clause purposes. Significantly, as *Commonwealth Edison* makes clear, the fact that a tax burden is borne primarily by out-of-state consumers does not render the tax impermissible under the Commerce Clause. Indeed, the "presence of the taxpayer in the State [] may properly be made to bear a 'just share of [the] state tax burden.'" *Id.* at 626 (citations omitted).

With respect to the "fairly related" prong, ARDA-ROC and Great Bay each assert that, because the Virgin Islands already imposes *ad valorem* property taxes on timeshares at a different

*The Kimberly Stonecipher-Fisher Revocable Trust, et al., v. Government of the Virgin Islands*
Civil No. 17-32
*Great Bay Condominium Owners Association, Inc., et al. v. Government of the Virgin Islands, et. al.*
Civil No. 17-33
Memorandum Opinion
Page 26

and greater rate than all other types of real property, the addition of the timeshare fee is impermissibly burdensome. ARDA-ROC and Great Bay argue that because the timeshare fee was presented by Governor Kenneth Mapp as a means of "recouping the cost to the Territory of the infrastructure necessary to support the presence of so many welcomed visitors and timeshare owners," *see, e.g.*, Joint Stipulated Record Ex. 12a at 4, ECF No. 174-12, the timeshare fee must be evaluated as a "user fee" that imposes a specific charge for the use of state-owned or state-provided transportation or other facilities and services. ARDA-ROC and Great Bay rely on *Evansville-Vanderburgh v. Delta Airlines, Inc.*, 405 U.S. 707 (1972), to support their argument.

That reliance is misplaced. In *Evansville-Vanderburgh v. Delta Airlines, Inc.*, 405 U.S. 707 (1972), the Evansville-Vanderburgh Airport Authority District (the "Airport Authority") was created by the Indiana Legislature to operate Dress Memorial Airport in Evansville, Indiana. *Evansville-Vanderburgh*, 405 U.S. at 709. Under its authority to enact ordinances adopting rates and charges to be collected from users of the airport facilities and services, the Airport authority enacted an ordinance establishing a use and service charge of $1 per commercial

*The Kimberly Stonecipher-Fisher Revocable Trust, et al., v. Government of the Virgin Islands*
Civil No. 17-32
*Great Bay Condominium Owners Association, Inc., et al. v. Government of the Virgin Islands, et. al.*
Civil No. 17-33
Memorandum Opinion
Page 27

airline passenger. *Id.* That charge was allocated to help defray the costs incurred by the Airport Authority in the construction, improvement, equipment, and maintenance of the Dress Memorial Airport. *Id.*

Significantly, *Evansville-Vanderburgh* and other such "user fee" cases apply only to "charge[s] imposed by the State for the use of state-owned or state-provided transportation or other facilities and services." *Commonwealth Edison*, 453 U.S. at 621; *see also Or. Waste Sys.*, 511 U.S. at 103 n.6 (noting the same). Indeed, user fees are assessed "to reimburse the State for costs incurred in providing *specific quantifiable* services." *Commonwealth Edison*, 453 U.S. at 622 n.12 (emphasis added).

Here, the timeshare fee is not imposed on the use of any particular state-owned facility. Indeed, the timeshare fee is imposed on the use of a privately owned timeshare. Moreover, the revenues from the timeshare fee are allocated in the following manner: (1) 15% to the Virgin Islands Tourism Advertising Revolving Fund, and (2) 85% to the General Fund from the present through 2021. *See* Joint Stipulated Record Ex. 1 at 3, ECF No. 174-1. From 2022 through 2023, the portion of the revenues from the timeshare fee allocated to the General Fund decreases to

*The Kimberly Stonecipher-Fisher Revocable Trust, et al., v. Government of the Virgin Islands*
Civil No. 17-32
*Great Bay Condominium Owners Association, Inc., et al. v. Government of the Virgin Islands, et. al.*
Civil No. 17-33
Memorandum Opinion
Page 28

40%, while 45% of the revenues are allocated to the VIESA Contingency Reserve Account. *Id.* at 3-4. From 2024 forward, the portion of the revenues from the timeshare fee allocated to the General Fund returns to 85%. *Id.* at 4. As such, the timeshare fee does not purport to assess a charge "to reimburse the State for costs incurred in providing specific quantifiable services." *Commonwealth Edison*, 453 U.S. at 622 n.12. Indeed, the allocation of the revenues from the timeshare fee demonstrate that it is a general revenue measure. The utterances by Governor Mapp on which ARDA-ROC and Great Bay rely do not change the function or the effect of the timeshare fee.

To satisfy the "fairly-related" prong, the measure of the timeshare fee must be reasonably related to the activities within the Virgin Islands upon which it imposes a tax. Here, the measure of the timeshare fee is proportional to the use of the timeshare property. Indeed, it is assessed at a rate of $25 per day of occupancy. As such, like the tax in *Commonwealth Edison*--which was measured as a percentage of the value of the coal extracted--the timeshare fee is imposed in proper proportion to timeshare owners' activities within the Virgin Islands and, therefore, "to their 'consequent enjoyment of the opportunities

*The Kimberly Stonecipher-Fisher Revocable Trust, et al., v. Government of the Virgin Islands*
Civil No. 17-32
*Great Bay Condominium Owners Association, Inc., et al. v. Government of the Virgin Islands, et. al.*
Civil No. 17-33
Memorandum Opinion
Page 29

and protections which the State has afforded' in connection with those activities." *Commonwealth Edison*, 453 U.S. at 626 (citations omitted). Thus, the timeshare fee satisfies the fourth prong of the *Complete Auto Transit* test.

Because the Court has found that the timeshare fee comports with each requirement of the *Complete Auto Transit* test, the Court holds that the timeshare fee does not violate the Commerce Clause.

## B. Equal Protection Claim

ARDA-ROC and Great Bay each argue that the timeshare fee violates the Equal Protection Clause because (1) it discriminates against non-residents in both purpose and effect, and (2) it is not supported by any reasonable consideration of difference or policy. Specifically, with respect to the discriminatory purpose and effect of the timeshare fee, ARDA-ROC and Great Bay argue that (1) the Government's express purpose in enacting the timeshare fee was to increase the tax burden on non-residents without increasing the tax burden on residents, and (2) the overwhelming majority of timeshares are owned by non-residents. With respect to the relationship of the timeshare fee to any legitimate government interest, ARDA-ROC and Great

*The Kimberly Stonecipher-Fisher Revocable Trust, et al., v. Government of the Virgin Islands*
Civil No. 17-32
*Great Bay Condominium Owners Association, Inc., et al. v. Government of the Virgin Islands, et. al.*
Civil No. 17-33
Memorandum Opinion
Page 30

Bay argue that (1) the Government has not conducted any study to determine the impact of timeshare owners on the Virgin Islands's infrastructure--the purported policy reason for the imposition of the fee--and (2) the revenue from the timeshare fee is allocated to expenditures unrelated to the impact of timeshare owners on the Virgin Islands's infrastructure.

This Court has had previous occasion to evaluate a claim that a property tax on timeshares violates the Equal Protection Clause because it discriminates against non-residents. In *Frank v. Government of Virgin Islands*, Civil No. 2009-66, 2012 WL 611373 (D.V.I. Feb. 23, 2012), *aff'd*, 563 F. App'x 169 (3d Cir. 2014), Ira Frank ("Frank") owned two timeshares in the Virgin Islands. Frank sued the Virgin Islands alleging that 33 V.I.C. § 2301(b), the Disparate Tax Schedule, violated the Equal Protection Clause because it taxed timeshare property at a higher rate than other forms of property. *See Frank*, 2012 WL 611373, at *9. Frank argued that the Disparate Tax Schedule was created with the intent to discriminate against non-resident property owners. *See id.* at *11.

*The Kimberly Stonecipher-Fisher Revocable Trust, et al., v. Government of the Virgin Islands*
Civil No. 17-32
*Great Bay Condominium Owners Association, Inc., et al. v. Government of the Virgin Islands, et. al.*
Civil No. 17-33
Memorandum Opinion
Page 31

This Court found that there was a rational basis for the disparate rates imposed by the Disparate Tax Schedule.

> Here, section 2301(b) has the legitimate purpose of "keep[ing] a roof over [ the] head[s]" of Virgin Islands homeowners. The statute does not contain a declaration of purpose. However, in a letter proposing Act No. 6991, the Governor of the Virgin Islands, John P. de Jongh, Jr., explained that "This system of multiple rates, used in many jurisdictions throughout the United States, results in smaller residential real property tax increases, thereby protecting the interests of Virgin Islands homeowners." Given the historic, economic, and social importance of the home, there is nothing unreasonable in establishing a taxation scheme that fosters homeownership and reduces the heavy realty tax burden in the Virgin Islands. Frank argues that the fact that timeshares are taxed at nearly four times the rate of residential property renders the scheme unreasonable. However, the Legislature could well have concluded that those who can afford timeshares have a correspondingly greater ability to pay taxes. It is not the Court's place to second-guess the policy decisions of the Legislature.

*Id.* at *11. The Court emphasized that the Disparate Tax Schedule drew no distinction between residents and non-residents: "Any owner of a timeshare, regardless of their residency, must pay taxes at the timeshare rate. If Frank owned a house instead of his timeshares, he would pay the residential property rate, even if he is a resident of Virginia." *Id.* As such, this Court found that the Disparate Tax Schedule did not violate the Equal Protection Clause. This Court explained "it is undisputed that once a statute has been shown to bear a rational relationship to

*The Kimberly Stonecipher-Fisher Revocable Trust, et al., v. Government of the Virgin Islands*
Civil No. 17-32
*Great Bay Condominium Owners Association, Inc., et al. v. Government of the Virgin Islands, et. al.*
Civil No. 17-33
Memorandum Opinion
Page 32

a legitimate purpose, the Equal Protection Clause has been

satisfied." *Id.*

This Court's judgment in *Frank* was affirmed by the Third

Circuit. In a brief analysis, the Third Circuit explained that

> [t]hough the tax measure categorizes timeshare
> properties differently from Virgin Island homesteads,
> the separate treatment does not distinguish between
> residents and non-residents. Additionally, the District
> Court rightly concluded that the distinction among
> properties drawn in the statute was rationally related
> to the legitimate governmental interest of aiding home
> ownership in the Virgin Islands. The District Court
> properly dismissed this claim.

*Frank v. Gov't of Virgin Islands*, 563 F. App'x 169, 170-71 (3d

Cir. 2014). *Frank* remains good law today.

Here, the timeshare fee assesses each "timeshare unit" a

fee of $25 per day of occupancy. 33 V.I.C. § 54(b)(3)(A). The

section of the Virgin Islands Code establishing the timeshare

fee does not define a "timeshare unit." However, another section

within the same title of the Virgin Islands Code defines

"[t]imeshare real property" as "any real property that is owned

or leased by several persons jointly and in which the ownership

or leasehold interests are for fixed periods of time."[7] 33 V.I.C.

§ 2301.

---

[7] The Virgin Islands Code does not define a "timeshare unit," or a discernible equivalent, in any section other than 33 V.I.C. § 2301.

*The Kimberly Stonecipher-Fisher Revocable Trust, et al., v. Government of the Virgin Islands*
Civil No. 17-32
*Great Bay Condominium Owners Association, Inc., et al. v. Government of the Virgin Islands, et. al.*
Civil No. 17-33
Memorandum Opinion
Page 33

Here as in *Frank*, the timeshare fee does not distinguish between residents and non-residents. Consequently, the Court must determine whether the imposition of an additional fee on timeshares, but not other real property, is rationally related to a legitimate governmental purpose. In this case, the avowed purpose of the timeshare fee is to "recoup[] the cost to the Territory of the infrastructure necessary to support the presence of so many welcomed visitors and timeshare owners," *see, e.g.*, Joint Stipulated Record Ex. 12a at 4, ECF No. 174-12.

Notwithstanding variations in the use of timeshare property by individual owners, it is rational to conclude that, as a whole, the use of timeshare property results in more intensive burdens on the Virgin Islands's infrastructure than the use of other types of residential properties. *See, e.g., Gardens at West Maui Vacation Club v. County of Maui*, 90 Haw. 334, 342-43 (1999) (concluding that the classification for taxation purposes of timeshare units into a "Hotel Resort" category rather than an "Apartment" category was reasonably related to the policy underlying such classification because "[m]ultiple owners subject to a time share plan, although vested with ownership rights in their time slots, put the units to use much like

*The Kimberly Stonecipher-Fisher Revocable Trust, et al., v. Government of the Virgin Islands*
Civil No. 17-32
*Great Bay Condominium Owners Association, Inc., et al. v. Government of the Virgin Islands, et. al.*
Civil No. 17-33
Memorandum Opinion
Page 34

transient hotel guests, resulting in intensive use of the property"). As such, the Government's avowed purpose of "recouping the cost to the Territory of the infrastructure necessary to support the presence of so many welcomed visitors and timeshare owners," *see, e.g.*, Joint Stipulated Record Ex. 12a at 4, ECF No. 174-12, provides a rational basis for the imposition of the timeshare fee.

While ARDA-ROC and Great Bay argue that the Government failed to measure the impact of timeshare owners on the Virgin Islands's infrastructure, the Court is unaware of any requirement under the Equal Protection Clause that the rational basis undergirding a taxation policy choice must be supported by a precise measure of the benefits provided to the taxed entity. *Cf. Commonwealth Edison*, 453 U.S. at 622-23 (citations omitted) (internal quotation marks omitted) (explaining that "there is no requirement under the Due Process Clause that the amount of general revenue taxes collected from a particular activity must be reasonably related to the value of the services provided to the activity. . . . A tax is not an assessment of benefits. It is . . . a means of distributing the burden of the cost of government"). Moreover, because timeshare users enjoy the

*The Kimberly Stonecipher-Fisher Revocable Trust, et al., v. Government of the Virgin Islands*
Civil No. 17-32
*Great Bay Condominium Owners Association, Inc., et al. v. Government of the Virgin Islands, et. al.*
Civil No. 17-33
Memorandum Opinion
Page 35

benefit of the general services provided by the Virgin Islands--such as police and fire protection, the benefit of a trained work force, and the advantages of a civilized society--the allocation of the large majority of the revenue from the timeshare fee to the Government's General Fund aligns with the legitimate purpose of the timeshare fee.

Thus, the Court holds that the timeshare fee does not violate the Equal Protection Clause.

## C. Privileges and Immunities Claim

ARDA-ROC and Great Bay each argue that the timeshare fee violates the Privileges and Immunities Clause for the same reasons that they argue it violates the Equal Protection Clause.

The Court also addressed such arguments in *Frank* with respect to the disparate tax imposed on timeshares by the Disparate Tax Schedule. There, the Court concluded that the tax did not violate the Privileges and Immunities Claim because the Disparate Tax Schedule drew no distinction between residents and non-residents and was reasonably related to a legitimate purpose. The Third Circuit summarily affirmed explaining that

> [f]or the same reason [that the Disparate Tax Schedule did not violate the Equal Protection Clause], Frank's contention is meritless that the [Disparate Tax Schedule] violates the Privilege and Immunities Clause of Article

*The Kimberly Stonecipher-Fisher Revocable Trust, et al., v. Government of the Virgin Islands*
Civil No. 17-32
*Great Bay Condominium Owners Association, Inc., et al. v. Government of the Virgin Islands, et. al.*
Civil No. 17-33
Memorandum Opinion
Page 36

IV of the United States Constitution. U.S. Const. art. IV, § 2. As already stated, the statute makes no distinction between resident and non-resident timeshare owners.

*Frank*, 563 F. App'x at 171.

Given that the timeshare fee makes no distinction between resident and non-resident timeshare owners and having concluded that there is a legitimate basis for the timeshare fee, the Court finds no reason to conclude that the timeshare fee violates the Privileges and Immunities Clause. Indeed, it follows from *Frank* that a tax roughly equivalent to the timeshare fee could be constitutionally imposed for the same legitimate purpose supporting the timeshare fee by simply increasing the mill rate applicable to timeshares under the Disparate Tax Schedule. The Court declines to elevate form over substance in this case by reaching an incongruous conclusion with respect to the constitutionality of the timeshare fee. *See Lunding*, 522 U.S. at 297 (citations omitted) (explaining that "where the question is whether a state taxing law contravenes rights secured by [the Federal Constitution], the decision must depend not upon any mere question of form, construction, or definition, but upon the practical operation and effect of the tax imposed").

*The Kimberly Stonecipher-Fisher Revocable Trust, et al., v. Government of the Virgin Islands*
Civil No. 17-32
*Great Bay Condominium Owners Association, Inc., et al. v. Government of the Virgin Islands, et. al.*
Civil No. 17-33
Memorandum Opinion
Page 37

**D. Count Four of the Great Bay Complaint**

In Count Four of the Great Bay Complaint, the Great Bay Association alleges that VIREERA's timeshare fee collection provisions violate its procedural and substantive due process rights.

With respect to procedural due process, the Great Bay Association argues that VIREERA's timeshare fee collection provisions do not provide the Great Bay Association with any procedures for redress. Significantly, "procedural due process does not extend to legislative action." *N.Y. Shipping Ass'n*, 835 F.3d at 357. As the Third Circuit has explained, "executive acts, such as employment decisions, typically apply to one person or to a limited number of persons, while legislative acts, generally laws and broad executive regulations, apply to large segments of society." *Nicholas*, 227 F.3d at 139 n.1. VIREERA is a law applicable to the public at large. As such, the Great Bay Association's claim that VIREERA's timeshare fee collection provisions violate its procedural due process rights must fail.

To the extent the Great Bay Association's claim challenges executive enforcement of VIREERA's timeshare fee collection

*The Kimberly Stonecipher-Fisher Revocable Trust, et al., v. Government of the Virgin Islands*
Civil No. 17-32
*Great Bay Condominium Owners Association, Inc., et al. v. Government of the Virgin Islands, et. al.*
Civil No. 17-33
Memorandum Opinion
Page 38

provisions against it, the Great Bay Association has not presented any evidence (1) that the Government has taken any enforcement action against the Great Bay Association or (2) that the Government has failed to provide the Great Bay Association with adequate procedures for redress. Significantly, "[a] claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998) (citations omitted) (internal quotation marks omitted). As such, to the extent the Great Bay Association is challenging some hypothetical, future executive action by the Government, the Court must dismiss such a challenge as unripe.

The Great Bay Association makes a similar argument with respect to substantive due process. The Great Bay Association asserts that VIREERA impermissibly imposes an obligation on timeshare plan managers to collect and pay the timeshare fee on behalf of owners. VIREERA in pertinent part provides that

> [t]he timeshare plan manager is responsible for collecting the Environmental/Infrastructure Impact Fee, filing the tax returns and paying the fee, plus any applicable interest or penalties, as required by this section, to the V.I. Bureau of Internal Revenue. The timeshare association is responsible for any and all assessments or liens.

*The Kimberly Stonecipher-Fisher Revocable Trust, et al., v. Government of the Virgin Islands*
Civil No. 17-32
*Great Bay Condominium Owners Association, Inc., et al. v. Government of the Virgin Islands, et. al.*
Civil No. 17-33
Memorandum Opinion
Page 39

*See* 33 V.I.C. § 54(b)(3)(B).

To survive the Great Bay Association's challenge to the legislative enactment of VIREERA's timeshare fee collection provisions, the Government must demonstrate the existence of a legitimate state interest that could be rationally furthered by those provisions. As previously discussed, the timeshare fee operates to raise revenue for the Virgin Islands. "[S]tates have an undoubtedly legitimate interest in raising revenue." *Keystone Redevelopment Partners, LLC v. Decker*, 631 F.3d 89, 110 (3d Cir. 2011). Delegating the responsibility for collection and remittance of the timeshare fee to a single centralized entity generally responsible for management of the timeshare plan provides a simple and efficient manner for the Government to collect the timeshare fee. Further, the Court is unaware of any authority suggesting that delegating in such a manner is impermissible. *Cf. Day v. High Point Condo. Resorts*, 521 So. 2d 1064, 1066 (Fla. 1988) (holding that a statutory scheme which utilized the managing entity of timeshare real property to collect and remit real property tax assessments did not violate due process). As such, the Government's legitimate interest in raising revenue through the timeshare fee is rationally

*The Kimberly Stonecipher-Fisher Revocable Trust, et al., v. Government of the Virgin Islands*
Civil No. 17-32
*Great Bay Condominium Owners Association, Inc., et al. v. Government of the Virgin Islands, et. al.*
Civil No. 17-33
Memorandum Opinion
Page 40

furthered by imposing the obligation to collect and pay the timeshare fee on timeshare plan managers.

To the extent that the Great Bay Association challenges any hypothetical, future executive enforcement of VIREERA's timeshare fee collection provisions, as discussed above, such claims are unripe.

Thus, the Court holds that VIREERA does not violate the Great Bay Association's due process rights.

**E. Count Five of the Great Bay Complaint**

Count Five of the Great Bay Complaint seeks damages for an alleged taking in violation of the Fifth Amendment. In the September 28, 2018, order granting the Government's motion to dismiss for lack of subject matter jurisdiction in part, the Court dismissed Count Five. As explained in its opinion, the Court relied on *Knick v. Twp. of Scott*, 862 F.3d 310 (3d Cir. 2017), *vacated* 139 S. Ct. 2162 (2019). *Knick* held that a plaintiff must seek and be denied just compensation using the state's procedures, provided such procedures are adequate, before a takings claim ripens in federal court. *See id.* at 323. Since this Court's decision dismissing Count Five of the Great

*The Kimberly Stonecipher-Fisher Revocable Trust, et al., v. Government of the Virgin Islands*
Civil No. 17-32
*Great Bay Condominium Owners Association, Inc., et al. v. Government of the Virgin Islands, et. al.*
Civil No. 17-33
Memorandum Opinion
Page 41

Bay Complaint on September 28, 2018, there has been an intervening change in law that warrants some discussion.

In *Knick v. Township of Scott*, 139 S. Ct. 2162 (2019), the Supreme Court held that a "property owner has suffered a violation of his Fifth Amendment rights when the government takes his property without just compensation, and therefore may bring his claim in federal court under §1983 at that time." *Knick v. Twp. of Scott*, 139 S. Ct. 2162, 2168 (2019). Accordingly, the prerequisites to bring a takings claim that once existed no longer preclude a takings claim. In light of this change, the Court will *sua sponte* re-examine Great Bay's takings claim.

The Fifth Amendment prohibits the taking of private property for public use without just compensation. *See* U.S. Const. Amend. V (stating "nor shall private property be taken for public use, without just compensation"). Significantly, "[i]t is beyond dispute that '[t]axes and user fees . . . are not "takings."'" *Koontz v. St. Johns River Water Mgmt. Dist.*, 570 U.S. 595, 615 (2013) (citations omitted). As this Court has previously concluded in this matter, the timeshare fee is a tax. *See Great Bay Condo. Owners Ass'n, Inc. v. Gov't of Virgin*

*The Kimberly Stonecipher-Fisher Revocable Trust, et al., v. Government of the Virgin Islands*
Civil No. 17-32
*Great Bay Condominium Owners Association, Inc., et al. v. Government of the Virgin Islands, et. al.*
Civil No. 17-33
Memorandum Opinion
Page 42

*Islands*, Civil No. 2017-33, 2018 WL 4690372, at *12–14 (D.V.I. Sept. 28, 2018). Thus, the Court has no difficulty concluding that the timeshare fee does not constitute a taking.

**F. Count Six of the Great Bay Complaint**

Count Six of the Great Bay Complaint seeks an injunction against enforcement of the timeshare fee under 5 V.I.C. § 80. That section provides that "[a] taxpayer may maintain an action to restrain illegal or unauthorized acts by a territorial officer or employee, or the wrongful disbursement of territorial funds." 5 V.I.C. § 80. Significantly, Count Six does not identify any additional illegality other than the alleged unconstitutionality raised in the other counts. Thus, because the Court has concluded that the timeshare fee is constitutional, the Court will dismiss Count Six of the Great Bay Complaint.

**G. Count Eight of the Great Bay Complaint**

Count Eight seeks a declaration that the Virgin Islands has failed to comply with the statutorily mandated appropriations and deposit requirements for the revenue generated by the timeshare fee. Count Eight also seeks an injunction requiring

*The Kimberly Stonecipher-Fisher Revocable Trust, et al., v. Government of the Virgin Islands*
Civil No. 17-32
*Great Bay Condominium Owners Association, Inc., et al. v. Government of the Virgin Islands, et. al.*
Civil No. 17-33
Memorandum Opinion
Page 43

the Government to comply with various Virgin Islands statutory

obligations.

Significantly, Great Bay does not identify any statutory or

common law cause of action that would entitle it to such

injunctive relief. Indeed, the Court is unaware of any cause of

action which would permit Great Bay to seek an injunction

requiring the Government to comply with the statutory

obligations asserted here. *Cf. Lujan v. Defs. of Wildlife*, 504

U.S. 555, 573-74 (1992) ("We have consistently held that a

plaintiff raising only a generally available grievance about

government -- claiming only harm to his and every citizen's

interest in proper application of the Constitution and laws, and

seeking relief that no more directly and tangibly benefits him

than it does the public at large -- does not state an Article

III case or controversy."). As such, the Court will dismiss

Count Eight of the Great Bay Complaint.

## IV. CONCLUSION

For the reasons explained above, the Court holds that the

timeshare fee does not violate the Commerce Clause, the Equal

Protection Clause, or the Privileges and Immunities Clause.

Additionally, the timeshare fee does not constitute a taking

*The Kimberly Stonecipher-Fisher Revocable Trust, et al., v. Government of the Virgin Islands*
Civil No. 17-32
*Great Bay Condominium Owners Association, Inc., et al. v. Government of the Virgin Islands, et. al.*
Civil No. 17-33
Memorandum Opinion
Page 44

under the Fifth Amendment. Given that timeshare fee is

constitutional, ARDA-ROC and Great Bay are not entitled to any

relief in this matter. An appropriate judgment follows.


S\_____
                **Curtis V. Gómez**
                **District Judge**